## Estate of Paul Ritter, deceased. Appeal of Catharine Neff.

*Will—Ademption of legacy—Presumption—Parol evidence to strengthen or rebut.*

If a testator gives a legacy to a stranger for any particular purpose and subsequently makes a payment, advancement or gift for the same purpose, such payment, etc., is presumed to be and will operate as a satisfaction of the legacy. Parol evidence is admissible for the purpose of repelling or strengthening the presumption even when not admissible in other cases or for other purposes.

Argued March 22, 1899. Appeal, No. 28, March T., 1899, by Catharine Neff, from decree of O. C. Franklin Co., overruling exceptions to auditor's report and confirming said report. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Exceptions to report of auditor appointed to audit the account of the executors of Paul Ritter, deceased, and to make distribution of the estate. Before STEWART, P. J.

It appears from the evidence that testator executed a judgment by single bill in favor of Catharine Neff for $1,000. By his will, a legacy was given to said Catharine Neff of $500. It was claimed on behalf of the residuary legatees that the judgment of $1,000 was in ademption of the legacy of $500 as set forth in the testator's will. [The auditor admitted under objection evidence of George W. Middour as to declarations made by the testator relative to the judgment note given by him to the legatee as touching upon the relation of such to any testamentary provision made or intended for such legatee.] [2]

The following exceptions to the auditor's report were overruled by the court below:

[The auditor erred in his sixteenth finding of fact. There is no evidence to warrant the finding. The sixteenth finding of fact is as follows: "It is found as a fact that Catharine Neff had knowledge of the fact that a will had been executed changing the amount of the legacy given her in the will of January 27, 1891, and that thereupon she threatened to move from the testator's home unless the legacy provided by the first will was secured beyond the testator's power to change the same. This purpose was accomplished by the giving to her the judgment note dated May 29, 1896."] [3]

[The auditor erred in his nineteenth finding of fact. It is unwarranted by the evidence. The nineteenth finding of fact is as follows: "The auditor finds that the testator substituted the $1,000 note for and in place of the $500 legacy to Catharine Neff mentioned in his last will and testament dated October 2, 1893. This finding of fact is based upon the declarations of the testator shortly after the execution of the judgment note dated May 29, 1896, as well as upon all the evidence in the case."] [4]

[The auditor erred in his fourth conclusion of law, he ought to have found that Catharine Neff is entitled to the $500 legacy given her in the last will and testament dated October 2, 1893. The fourth conclusion of law is as follows: "The $1,000 given and secured to Catharine (Tennia) Neff, by judgment note dated May 29, 1896, is a satisfaction of the $500 legacy given her, the said Catharine Neff, by said testator in his last will and testament dated October 2, 1893."] [5]

The court, STEWART, P. J., dismissed all the exceptions and confirmed the report of the auditor, filing the following opinion:

Paul Ritter, the testator, and Hannah his wife, were each possessed of an estate; they were well advanced in life, and were childless. The wife's estate amounted to some $1,200 or $1,400, and has passed into the husband's hands. On the 30th of January, 1891, she executed and acknowledged an assignment and transfer of her entire estate to her husband, the purpose of the transfer, as expressed in the paper, being "to debar my heirs forever from asserting any right to said sum of money, or of disputing my husband's right thereto." The assignment contains this reservation or condition, "but out of said sum my husband's executor is to pay the Catharine Neff legacy of $1,000, mentioned in my husband's will."

The will of Paul Ritter referred to in the assignment, bears date January 27, 1891, being three days prior in its execution to the wife's assignment, and contains the clause, "After Hannah's death my executor is to sell my real estate and make good deeds for the same, and he is to collect all my personal estate, and turn it into money, and it is to be divided as follows: First, out of the proceeds of my real and personal estate I give to Catharine Neff One thousand Dollars, said legacy to have preference over all other legacies to be first paid. My wife Hannah gave me as a gift her estate and I prefer that said legacy be paid out of said estate so given me by my wife, but should this be consumed, said legacy is to be paid out of my other estate."

Shortly after this, the wife, Hannah, died, and on the 25th of October, 1893, her husband, Paul, made another will which has been duly probated as his last will, and in which he revokes all former wills by him at any time made. This last will contains the following bequest to Tennia Neff, who, it is admitted, is identical with the Catharine Neff mentioned in the former will and in the assignment from the wife to her husband.

"4th. I give and bequeath to the said Tennia Neff, wife of George Neff, Five Hundred dollars in money."

On May 29, 1896, the testator, Paul Ritter, executed his single bill confessing judgment in favor of the same Catharine Neff in the sum of $1,000, which was duly entered to No. 131 of September term, 1896, and became a lien upon the real estate. This single bill contains the following recital:

"Whereas, Paul Ritter of Quincy township, Franklin county, Pennsylvania, on the 30th day of January, A. D., 1891, made his last will and testament, in which among other bequests, he gave and bequeathed to Catharine Neff, of said township, the sum of $1,000, to be paid to her out of his estate. The wife of the said Paul Ritter at the same time executed an instrument of writing, setting over and transferring all her estate to her husband, the said Paul Ritter. Now in order to secure to said Catharine Neff the certainty of the payment of the legacy of $1,000, I hereby acknowledge myself to owe and stand indebted to said Catharine Neff," etc.

The discrepancy as to the date assigned to the will, is without significance, it being admitted that it is the will of January 27, 1891, that is referred to.

Ritter, the testator, died June 11, 1897. The judgment in favor of Catharine Neff has been paid out of his estate. In addition, Catharine Neff claims the legacy of $500 given her under the last will of October 2, 1893. The auditor distributing the estate, has rejected her claim to the legacy, on the ground that it was adeemed by the judgment of $1,000, which had been paid her. The exceptions filed are directed to this conclusion of the auditor, and present the one issue.

The question is one wholly of intention, and the burden is upon those who assert that it was intended by the judgment to pay and satisfy the legacy. The law raises no such presumption in a case of this kind, since the relation of parent and child did not exist between the testator and his legatee. Mrs. Neff was the testator's housekeeper. In Sprenkle's Appeal, 15 Atl. Rep. 773, we have a clear decision that such relation raises no presumption of satisfaction from a subsequent gift.

Nor does the contention that the judgment was given in fulfillment of this particular legacy derive any support from the written evidence of the transaction. By the terms of the single bill it appears that it was given as substitutional for a legacy of $1,000, in a will that has been revoked by testator's own act, and there is nothing whatever in the instrument to suggest that this was not its only purpose.

It became necessary for the parties contesting to resort to extrinsic evidence, and, under objection, they offered evidence showing the circumstances under which the several wills and

the judgment were executed, and the declarations of the testator as to his own understanding of what the latter was intended to accomplish.

As to the admissibility of such evidence, there can be no question. It was not offered to explain an ambiguity, for there is none; nor to correct a mistake in the will, nor to alter or vary any of its terms, but simply to discover what purpose was in the mind of Paul Ritter when he executed the judgment note. That purpose, whatever it was, must govern.

The legacy of $500, given in the last will was, either intended to be additional to the $1,000 legacy in the earlier will, or, it was the same legacy reduced in amount, that is to say, if not the former, it was intended to take the place of the larger legacy and was a substitute for it. It is important to determine which it was, because if intended as an additional legacy, it is manifestly outside of the operation of the judgment note; if, on the other hand, it was intended as a substitute, and the object in giving the judgment note was to fulfil the whole purpose of the original legacy, in such case the later legacy being identical with the earlier, except as changed in amount, would also find its fulfillment in the judgment.

On a careful consideration of the case we find nothing that leads us to suppose that an additional legacy was intended. On the contrary every circumstance points to the conclusion that testator's purpose was to reduce the earlier legacy one half. Whether it was honest in him to attempt this, in view of the fact that he had received the larger amount from his wife on condition, or promise on his part, that he would bequeath it to this legatee, or whether he could have defeated Mrs. Neff's claim to it by such act, are questions aside from our present inquiry; we are concerned only with his purpose. Not only is there no suggestion in the last will that additional bounty is intended, but all reference to the money derived from his wife, and the purpose of the wife in connection with the gift, is avoided, and the earlier will which contained a free reference to these matters, and which directed a legacy of $1,000, in fulfillment of the understanding between the testator and his wife, is revoked. We dare not, under such circumstances as these, suppose that the $1,000 legacy was additional. Testator was a German, with little if any knowledge of the English

language, but no question was ever raised as to his intelligence. He must have known that his last will revoked the earlier one, and that with it fell the legacy of $1,000. He made no reference to it in his last will, nor does he recognize in any way the liability of his estate for it, until he is brought to face the alternative of securing it for Mrs. Neff, or losing her services as housekeeper, and then he gives the judgment note.

If then we are to regard the legacy in the last will as substitutional and not as supplemental or additional, the purpose in giving the judgment note, it would seem should embrace both legacies, unless there is something expressed in the note to indicate the contrary. Here we are met with the fact that the single bill while clearly expressing a purpose to secure the legacy contained in the earlier will, is silent with respect to the last will, and but for the substitutional character of the later legacy which identifies it with the earlier one, the rule that the express mention of one thing implies the exclusion of another, would leave the later legacy unaffected. But in this connection we are to have regard to the situation or circumstances of testator when he gave the single bill. This paper was prepared by a scrivener who was as ignorant of German as the testator was of English, and could only know what testator meant or what he wanted as the testator's speech was interpreted to him by men who were unskilled in legal requirement. The rule referred to is not to be applied with utmost strictness to a paper drawn and executed under such circumstances. But without relaxing the rule, its effect is fully overcome by the subsequent declarations of the testator with reference to the single bill and his understanding of its effect. The admissibility of these subsequent declarations in evidence can be established by numerous authorities. It is unnecessary to cite more than Zeiter v. Zeiter, 4 Watts, 21. The rule as there laid down has been steadily followed ever since in questions of this character.

The witnesses who testify to these subsequent declarations were neighbors and acquaintances of the testator. The conversations as testified to by them, show unmistakably that it was the testator's understanding that in giving the judgment he was fulfilling the whole purpose of the earlier legacy, and of the later one as well. To Mr. Middour he said that he has "fixed a paper down at Stoler's in Waynesboro, that Tennia would

get $1,000 now in place of the $500, that he had put in the will." That they (the Neffs) had found out that he had made a will, and that they were not getting the $1,000, and that they would move away and not stay with him any longer if they did not get the $1,000. When Mr. Middour suggested to him that the Neffs might get both the $1,000 and the $500 legacies, his reply was, "No, Stoler fixed it for only $1,000." The other declarations proven were equally as explicit, and show beyond dispute that the single bill does not by its terms express the whole of testator's purpose in its execution.

In view of the facts and circumstances we have referred to, we do not think that Mrs. Neff's claim to this legacy of $500, can be enforced consistently with equity and good conscience. She has already received payment of her judgment, and we are convinced that to allow her this legacy in addition, would be a pro tanto duplication of payment. We agree with the auditor in his conclusions.

And now, November 19, 1898, the exceptions to the auditor's report are overruled, and the report is confirmed.

Exceptions dismissed and report confirmed. Catharine Neff appealed.

*Errors assigned* were (1) in overruling exceptions to auditor's report and confirming said report. (2) In not sustaining the objection to the evidence of George W. Middour and in not excluding from consideration the evidence objected to, reciting same (the purport of said evidence being indicated in the statement of facts). (3–5) In not sustaining the first, third and fourth exceptions to the auditor's report, reciting same.

*J. A. Strite*, for appellant.—The case in hand clearly is not included among those in which declarations of the testator are admissible in evidence. There is no doubt here as to the relation of legatee to testator. She was a married woman, not his child, and was his housekeeper. He did not stand to her in loco parentis: Sprenkle's Appeal, 1 Mona. 402. The legacy is given for no specified purpose, " Legacies are considered as gratuities and are always construed favorably:" Byrne v. Byrne, 3 S. & R. 54.

Testator's intention is clearly expressed in writing in the single bill itself.

The only extrinsic evidence generally admissible is that which discloses the circumstances surrounding the execution of the instrument, the nature and situation of the subject-matter, the relations of the parties, and the like, and which thus places the court in the very position which the parties occupied when the writing was executed.

Parol extrinsic evidence tending to show the donor's intention that a satisfaction should or should not be wrought by his second gift, so far as it would violate this general rule, cannot, of course, be admitted: Pomeroy's Eq. Jur. sec. 570.

When the written evidence shows donor's intention no extrinsic parol evidence of the donor's declarations nor other parol evidence showing his intention is admissible.

The circumstances under which it was executed can be proved, but that no other kind of extrinsic evidence can be resorted to in such a case for the purpose of showing donor's intention, is a proposition too clear for discussion: 1 Pomeroy's Eq. Jur. sec. 570; Kirk v. Eddowes, 3 Hare, 509.

Even where to rebut a presumption extrinsic evidence has been held admissible, declarations of the testator have been admitted in evidence only when part of the res gestæ: Kirk v. Eddowes, 3 Hare, 509.

The same principle is illustrated by DeGroff v. Terpenning, 14 Hun, 301.

Appellees called but one witness, George W. Middour. If his testimony as to decedent's declarations be held inadmissible, there remains not a scintilla of evidence on which to base the auditor's sixteenth and nineteenth findings of fact.

*W. U. Brewer*, with him *O. C. Bowers*, for appellees.—The fact of ademption must be established by proof, and for this purpose parol evidence is admissible: Keiper's Appeal, 124 Pa. 193; Richards v. Humphreys, 32 Mass. 133; Ursinus College's Appeal, 23 W. N. C. 261; Lloyd v. Harvey, 2 Russ. & Mylne, 310; Pollock v. Worrall, 28 Chanc. Div. 552.

The rule is, that where the testator does not stand in the relation of parent to the legatee, the legacy will be adeemed by a subsequent benefit or advancement, if the legacy is given in discharge of a promise or other particular purpose, and the testator in his lifetime confers a benefit or advancement for

the same purpose: Davidson v. Foley, 2 Bro. C. C. 165; Keiper's Appeal, 124 Pa. 193; Garrett's Appeal, 15 Pa. 212; Ursinus College's Appeal, 23 W. N. C. 261.

OPINION BY BEAVER, J., May 18, 1899:

It will serve no useful purpose to recount the facts fully stated in the opinion of the president judge of the court below. They were found by an auditor and concurred in by the court; but it is said that they were based upon the testimony of a witness whose testimony was not competent and should have been excluded. The appellant argues the admissibility of the testimony of this witness as though an effort were being made to reform or vary the terms of the will and that, therefore, the testimony of two witnesses or what would be at least equivalent thereto is necessary, but this is not the case. There is no effort to reform the will or to vary its terms in any way. The sole question is one of the intention of the testator in giving the judgment note. If the testator had died, without executing the note upon which judgment was entered in favor of the appellant, there is no question as to what the result, so far as appellant's interests are concerned, would have been. She would have taken under the last will, the provisions of the first will being annulled by the later one. Did the testator, by recounting in the note the provision which had been made for the appellant in his first will, intend thereby to continue the provision made for the appellant in both of his wills, or did he merely intend to assure to the appellant the amount of the legacy named in his first will? We are of the opinion that, from an examination of the papers themselves, the latter statement expressed the intention of the testator; but whatever differences of opinion there may be as to the intention of the testator, viewed from the papers themselves, there can be little question in regard to it, when the testimony of Stoler, the justice of the peace who prepared the judgment note, and Middour, to whom the plaintiff frequently communicated his intentions, is considered. The appellant and her husband became uneasy, fearing that the testator might in some way have done something to deprive them of the legacy specified in the first will, and proposed to leave his employ. Possibly they may have suspected or become satisfied of the existence of the last will. The suggestion as to a mode of

providing for the payment of the amount of the legacy mentioned in the first will came from the justice of the peace who prepared the judgment note upon which judgment was entered and which was paid to the appellant by the executor, before the distribution of the estate; but it is to be borne in mind that the appellant and her husband were insisting upon some provision which would secure it to her. After the execution of this judgment note, the testator frequently expressed himself to the witness Middour, stating that Tennia (meaning the appellant) would get $1,000 now in place of the $500. By making his second will, the testator simply changed his mind as to the amount which should be paid after his death to the appellant, and the execution of the judgment note was equivalent to another change of mind and to an agreement with her that, under no circumstances, should she receive less from his estate than $1,000, but the very terms of it show that it was not intended to secure to her the amount therein mentioned in addition to the testamentary provision for her.

There was abundant testimony, entirely competent, upon which to base the auditor's findings of fact, the distribution made by him was undoubtedly in accordance with the testator's intentions and they must govern. The execution and delivery of the judgment note was equivalent to an ademption of the legacy and, when it was paid, the appellant's interest in the testator's estate was extinguished, except as to the interest thereon from the time of his death, which was allowed by the auditor.

The distribution made by the auditor, as confirmed by the court, was based upon the intention of the testator ascertained properly, upon competent testimony, and the decree of the court, overruling the exceptions to his report, was entirely proper, for the reasons stated in the opinion accompanying the decree. Decree affirmed and appeal dismissed.