## Jeffery's Estate.

16

Argued December 6, 1938.  Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John J. McDevitt, Jr.,* with him *Joseph M. Leib,* and *John J. McDevitt, 3rd,* for appellant.

*George Wharton Pepper,* with him *William Carson Bodine* and *Thomas Stokes,* of *Pepper, Bodine, Stokes & Schoch,* and *William E. McCall, Jr.,* for appellees.

OPINION BY MR. JUSTICE LINN, January 9, 1939:

These two appeals are from decrees of distribution of property under inter vivos trust deeds approving apportionment of federal estate taxes on property passing at the death of Charles T. Jeffery by will and trust deeds.

By will he disposed of property valued at $198,480.11; in the first paragraph, he directed payment of debts and funeral expenses; in the second, he gave the residue to his wife Kate R. Jeffery, and his daughter, Margaret C. Jeffery, in equal shares.  In the third paragraph,[1] he dealt with certain inter vivos trusts.

---

[1] "THIRD: I have made and created certain trusts, inter vivos in character, some being revocable and some being irrevocable and I expressly declare that said trusts and all of them are hereby in all respects ratified and confirmed and shall continue operative

The auditing judge found that the federal estate tax had "been properly computed upon an aggregate sum made up of the taxable individual estate of the decedent," plus certain trusts, and taxable life insurance, all of which he set out as follows:

"The amount of the taxable individual estate thus computed is ............................. $198,480.11
The amount of the taxable life insurance is ....... 47,522.53
The amount of the taxable Hudson Trust is ..... 570,452.92
The amount of the taxable Kate R. Jeffery Trust is ......................................... 365,452.75
The amount of the taxable Margaret C. Jeffery Trust is .................................... 579,589.78
The amount of the fourth taxable trust (not now before the Court) is ........................ 109,116.27

The total estate subject to the Federal Estate Tax is therefore .............................. $1,870,614.36
The total estate tax, upon the basis of these figures, is ................................... $407,846.57

"Proceeding upon the theory that the burden of this aggregate tax should in equity be borne ratably by the trust estates and by the residuary estate, the following apportionment has been made:

"Portion of the tax to be borne by the individual estate ..................................... $43,274.25
Portion of the tax to be borne by life insurance .. 10,361.25
Portion of the tax to be borne by Hudson Trust .. 124,374.79
Portion of the tax to be borne by Kate R. Jeffery Trust ...................................... 79,678.98
Portion of the tax to be borne by Margaret C. Jeffery Trust .............................. 126,366.88
Portion of the tax to be borne by the fourth trust . 23,790.42

Total, .................................. $407,846.57"

according to their tenor and effect and all funds and property included in and held under said trusts and each of them and all rights of the beneficiaries thereunder shall be and remain subject to the terms and provisions of said trusts and shall form no part of my testamentary estate and shall not be affected in any way by this my Last Will and Testament."

All interested parties agreed to that apportionment. Under the trust deeds executed in 1928 for Kate R. Jeffery and for Margaret C. Jeffery, unborn persons might become interested; to represent such interests the court appointed a guardian ad litem who excepted to the apportionment. The exceptions were dismissed on two grounds: first, as required by a provision in the deeds of trust, and, second, pursuant to the Act of July 2, 1937, P. L. 2762, 20 PS section 844. Counsel for the assenting beneficiaries also sought to justify the apportionment by the equitable rules of marshalling and exoneration, but the learned court below rejected the contention. As either of the two grounds on which the decrees were made is sufficient to support them, they will be affirmed, but affirmance is not to be understood as holding that proper application of the equitable doctrine involved would not support the decrees; that subject is left open.

1. The trust deeds provide for apportionment. The second paragraph required the trustee "To pay out of said trust fund all costs, charges and expenses of said trust estate and of the management thereof, including court costs and attorneys' fees, and reasonable compensation to the party of the second part for its services as Trustee hereunder." The deeds were made in contemplation of existing laws and at a time when revocable trusts were subject to federal estate tax on the settlor's estate.[2] The testator is presumed to have known that the tax was payable out of his property. The will shows that he intended to benefit his wife and daughter, a purpose that would be frustrated if all he gave them was taken for estate taxes in part payable out of trust prop-

---

[2] *Reinecke v. Northern Trust Co.*, 278 U. S. 339. In *Y. M. C. A. v. Davis*, 264 U. S. 47, 50, the court said: "What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death: *Knowlton v. Moore*, 178 U. S. 41, 48. Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries."

erty. He had the power to direct apportionment: Sec. 314(b) Revenue Act 1926, 26 USCA 426(b); (see also *Baily's Estate,* 290 Pa. 3, 137 A. 733), and exercised the power by charging the trust property with the "costs, charges and expenses of said trust estate"; the words "charges"[3] and "expenses"[4] show such intention in the circumstances. The third paragraph of the will, quoted above, also supports the conclusion that the testator intended that each trust should support the transition of the trust property.

2. The Act of July 2, 1937, P. L. 2762, 20 PS section 844, a supplement to the Fiduciaries' Act of June 7, 1917, P. L. 447, 20 PS section 321 et seq., provided, inter alia, "Whenever it appears upon any accounting or in any appropriate action or proceeding that an executor, administrator, temporary administrator, trustee, or other person acting in a fiduciary capacity has paid an estate tax, levied or assessed . . . under any law hereafter enacted, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made by the orphans' court . . ."

The accounts of the trustee under the deeds came up for audit April 7, 1937. The adjudications were filed in the following December. While the Act was passed before they were filed the auditing judge rested his conclu-

---

[3] See *Bispham's Estate,* 24 W. N. C. 79; *Peart v. Phipps,* 4 Yeates 386; *Darling v. Rogers,* 22 Wend. (N. Y.) 483.

[4] Which has been held to include state transfer taxes and United States War Tax: *Brown's Estate,* 208 Pa. 161, 57 A. 360; see also *Uber's Estate,* 330 Pa. 417, 199 A. 356.

sion on the terms of the deeds of trust, and did not deal with the statute. The court[5] in banc, on the exceptions filed by the guardian ad litem to the adjudication, held the Act applicable. The guardian contends it was intended to apply only to the estates of decedents dying after its effective date.

We think the legislature intended that it should apply to existing proceedings as the following words show: "Whenever [on or after July 2, 1937, the date on which the Act became effective] it appears upon any accounting or in any appropriate action or proceeding that [any accountant] . . . has paid an estate tax . . . the amount . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues . . ."

On the date when the act became effective the adjudication had not been made; the transition of title resulting from the adjudication was therefore not complete; the proceeding was pending; the estate tax had been paid by a fiduciary. The record therefore presented facts squarely within the words of the statute requiring the tax payment to be "equitably prorated among the persons interested . . . to whom such property is or may be transferred," the testator not having directed otherwise.

It is well settled that such interpretation of the statute does not take away vested rights in violation of constitutional limitations: *Jewell's Estate*, 235 Pa. 119, 83 A. 610; *Cahen v. Brewster*, 203 U. S. 543; *Carpenter v. Penna.*, 58 U. S. 456. It is not important to consider whether it should be classified as retroactive or prospective; its terms show that it was clearly and manifestly[6]

---

[5] The opinions are reported in 32 D. & C. Rep. 5.

[6] "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature": Sec. 56, Statutory Construction Act, May 28, 1937, P. L. 1019, 46 PS section 556.

intended to be applied to facts such as appear in the record.

Decrees affirmed, costs to be paid out of fund for distribution.