## Crooks' Estate

*Carl W. Herdic* and *Henry Clay McCormick*, of *Mc-Cormick, Herdic & Furst*, for petitioners.

*Don L. Larrabee, Clyde E. Williamson, John G. Candor, William Carson Bodine*, and *J. S. Conwell*, of *Pepper, Bodine, Stokes & Schoch*, contra.

RHONE, J., May 20, 1939.—

## I.

We have concluded that the orphans' court does have jurisdiction to prorate taxes as set forth in the Act of July 2, 1937, P. L. 2762, (1) upon any accounting, or (2) in any appropriate action unless the testator otherwise directs in his will. The Supreme Court held in Jeffery's Estate, 333 Pa. 15, that a testator was presumed to have known that Federal estate taxes were payable out of his property. He is likewise presumed to have known that the State of Pennsylvania is clothed with power to put in force the Act of 1937, supra, providing for proration of taxes between those who take under the estate created by the will or under the intestate laws, and beneficiaries under insurance trusts, or such policies as were issued in this case.

Under the view the court takes with reference to the defenses set up in this action it is not necessary to decide the constitutional questions raised by the defendant insurance companies in this case, (a) that the Act of 1937 violates article I, sec. 10, clause 1, of the Constitution of the United States relating to impairment of the obligation of contracts, nor (b) whether it conflicts with the Revenue Act of February 26, 1926, 44 Stat. at L. 9, and, therefore, violates article VI, sec. 2, of the Constitution of the United States.

It is proper to state that there is no accounting before the court in this case which would supply the jurisdiction to prorate taxes between the contesting parties. But the court is of the opinion that, as between executors and beneficiaries under life insurance policies, the petition which was filed in this case and the citation which was issued thereunder do constitute an appropriate proceeding for the purpose at least of prorating the taxes between the estate set up by the will and beneficiaries under insurance policies, although we have decided that there

can be no proration in this case, for reasons hereinafter stated.

The executors do not have possession of the proceeds of the life insurance policies and the money is not in the custody of the court itself. It would, therefore, seem that the executors, not having charged these beneficiaries in any accounting now before the court with any part of these taxes which they claim they have paid for the account of the beneficiaries, are required to institute a plenary action to recover any amount which the orphans' court might find ought to be paid by them, where, as in this case, the executors have already paid the taxes.

It is important that this question shall be decided promptly because it is of interest to this court which will soon have other cases of a similar character before it. It is of interest to the profession generally, and is of vital interest to persons who are about to enter into insurance contracts or dispose of their estates by will. We will discuss it more fully later on in this opinion.

## II.

We have concluded that when George W. Crooks said in his will, as he did, "I direct that all estate, inheritance and transfer taxes of every kind and character assessed against my estate", and further said, "and all such taxes shall be considered as a part of the expenses of the administration of my estate", he meant that no taxes, howsoever levied, should be payable out of any fund except from his residuary estate, and that they should be charged as part of the expenses of the administration of his estate.

Counsel for the executors contend that the language in the will beginning at the end of the second line of the sixth paragraph, which reads, "or any interest therein passing hereunder", limits the payments out of the residuary estate to taxes levied against the property disposed of in the will. We do not agree with this contention. The exact language of the will is:

"I direct that all estate, inheritance and transfer taxes of every kind and character assessed against my estate or any interest therein, passing hereunder."

This is a compound sentence and under a well-recognized rule of English grammar a correct reading of this sentence is:

"I direct that all estate, inheritance and transfer tax of every kind and character assessed against my estate or (assessed) against any interests therein passing hereunder, etc."

And we are further of the opinion that the last sentence, "All such taxes shall be considered a part of the expenses of the administration of my estate", refers to all taxes of every character that may be assessed against the gross estate referred to in this compound sentence, which shall be paid out of the residuary estate. The word "estate" is defined sometimes as follows:

" 'In a popular sense, "estate" has relation to condition in life, prosperity or adversity, and may include not only property, but also rank, office, income, social position, and even character. In legal parlance, its meaning is more restricted, but it is not always uniform' ": 3 Words and Phrases (1st Ser.), 2475.

The word estate in general is applicable to anything " '. . . of which riches or fortune may consist' ": Cooney v. Lincoln, 20 R. I. 183, 37 Atl. 1031.

"In wills the import of the term (estate) depends in a great degree upon its association with other expressions": Hinckley's Estate, 58 Cal. 457, 514.

We understand the law to be that where the language of a will is susceptible of alternative interpretation it is the duty of the court to construe the will in accordance with the real intent of the testator.

As stated in the above citations, the word "estate" is an elastic term and may include anything "of which riches or fortune may consist . . . and the import of the term estate depends in a great degree on its association with other words". It is a common thing in opin-

ions of the courts and enactments of the legislature to encounter the terms "gross estate", "net estate", "tax estate", and "estate tax return".

For instance, the return made to the United States Government in this case, offered in evidence by stipulation, form 706, is entitled "Estate Tax Return", and included among the instructions and regulations printed on this paper are these words under sub-title "Gross Estate".

"In addition to property passing under a will or the Intestate Laws, the *gross estate* for the purpose of the *estate tax* includes joint estates, tenancies by the entireties, *life insurance,* even though payable to *beneficiaries not mentioned in the will,* property over which the decedent exercised a general power of appointment and dower, courtesy or statutory estate in lieu thereof the surviving spouse."

In article 87 of the Treasury Regulations, this language appears:

"If any portion of the tax is paid by or collected out of . . . *the estate* passing to or in possession of any person other than the executor or administrator, such person may be entitled to reimbursement."

And in section 314(*b*) of the Revenue Act of 1926 are these words:

"If any part of the *gross estate* consists of proceeds of policies *of insurance* upon the life of the decedent receivable by a beneficiary other than the executor."

Again in section 314(*b*) of the Revenue Act of 1926 appear these words:

"If the tax or any part thereof is paid by, or collected out of that *part of the estate* passing to or in the possession of, any person *other than the executor* in his capacity as such." (Italics supplied.)

In section 48.1 of the Act of 1937, supra, we find this language:

". . . under the provisions of any *estate tax law* . . . required to be included in the *gross estate* of a decedent

. . . shall be equitably prorated among the persons interested *in the estate* to whom such property is or may be transferred, or to whom any benefit accrues."

We find this language in the same section, "the value of the *net estate*", and in the legislative definition of the phrase "persons interested in the estate" are these words:

". . . include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the *gross estate* of a decedent . . . whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power . . . providing for the levy or assessment of estate taxes."

It, therefore, appears to the court that when George W. Crooks, decedent, executed his will and set forth therein this language, "I direct that all estate . . . taxes of every kind and character assessed *against my estate* or [assessed] against [predicate understood or supplied] any interest therein passing hereinunder shall be paid from my residuary estate, and . . . all such taxes shall be considered as part of the expenses of the administration of my estate," he used the word "estate" in its broadest sense or meaning, viz., all taxes assessed against whatever passed under his will or any interest therein, and also all taxes which might be required to be paid out of any fund that passed to his wife or children otherwise.

An examination of the Crooks will discloses that there are only four specific bequests in his will and the total amount of these bequests is less than $4,000. These are bequests of $1,000 to each of three sisters, and the household goods and other items of personal property, amounting to less than $1,000, to the wife. The balance of his estate disposed of by the will is inventoried at more than $200,000, and this is called his residuary estate, and is given in trust to his executors for the benefit of his wife and children, primarily, with remainder to his heirs at law (his brothers and sisters) under the intestate laws, upon the death of his children without issue surviving

them. So that to limit the language of the will relating to the payment of taxes as contended for by the executors would benefit only the bequests so made and an insignificant amount of taxes be saved to them. It is apparent that the primary object of testator's bounty was his wife and children and not his sisters nor his collateral heirs at law who might inherit the trust fund if the daughters died without issue.

If the contention of the executors is sustained we then have this situation, according to the estate tax return made to the Federal Government. The total amount of money retained by the insurance companies upon which they were to pay three percent interest is $144,832.39. The taxes now sought to be recovered from the wife and children on these insurance policies is $14,481.17. The amounts retained by the insurance companies on the policies in question are: Mutual Benefit, $134,814.32, and Union Central, $10,018.07. The companies are only required to pay three percent interest on the amounts so retained. Three percent of $144,832.39 is $4,344.79. In order to reimburse the insurance companies for the payment of $14,481.17, if they are required to pay, they would have to retain these annual payments for more than three years, during which time the wife and children would get nothing from the insurance policies. We cannot believe George W. Crooks intended any such result to his wife and children when we read the language contained in his will as to how the taxes shall be paid. Mr. Crooks was an able and astute business man. He had made all kinds of tax returns both individually and in behalf of the large business interests in which he was interested. His residuary estate, according to the inventory, is composed almost entirely of good and marketable stocks and bonds, and amounts to more than $200,000. He knew his executors could convert sufficient of these stocks and bonds into money with which to pay any tax that might be levied against his entire fortune, including the insurance he had provided for his wife and children.

Ely's Estate, 28 D. & C. 663, has been cited by counsel for the executors as in conflict with the decision we have made. We do not agree with this contention even though it should be held that the court in that case arrived at the correct interpretation of the will then before it. The language is entirely different than is contained in the Crooks will and we do not think Ely's Estate is any authority against the decision we have made.

### III.

We are of the opinion that the attempt of the legislature to confer *summary jurisdiction* upon the orphans' court to enable it to compel insurance beneficiaries or insurance companies to pay taxes prorated against such beneficiaries or insurance companies, when the sole purpose in bringing the proceeding is to reimburse the executors for taxes already paid by them, where, as in this case, the contracts of insurance themselves authorize the companies to retain the proceeds of the policies and pay interest on the amount so retained to the beneficiaries in instalments, is unconstitutional and void.

In the annotation to Johnson v. Nelson, 341 Ill. 119, 173 N. E. 77, in 88 A. L. R., at page 853, the introduction thereto is as follows:

"It is held without exception, that summary proceedings for the recovery of property belonging to decedents' estates cannot be used for the collection of debts owing to the estate."

To the same effect are Berkey's Estate, 102 Pa. Superior Ct. 306, and McGovern's Estate, 322 Pa. 379. And the main thought in the two Pennsylvania cases cited is that the orphans' court cannot assert jurisdiction over property which has never been in its control and which property is in the possession of third parties, and is held under claim of right (not merely colorable), and is not a part of the estate it is administering.

See also Hober's Estate, 118 Pa. Superior Ct. 209.

Applying this doctrine to the facts in the case we have the following situation. George W. Crooks, by exercising what is known as option A in the policies issued to him by the defendant companies, entered into a contract with them wherein and whereby the insurance companies agreed to pay to the beneficiaries therein named, Mrs. Crooks and the two then minor children, three percent per annum of the amount retained by the companies under the insurance contracts, as the proceeds of these policies, and continue such payments to them under the terms of the policies until permissive withdrawals would exhaust the fund.

Pursuing the matter further we find that the insurance companies, under the provisions of their contracts of insurance, took over the proceeds of these policies and credited the beneficiaries with the amount involved. They thereupon issued certificates of their indebtedness to the beneficiaries, which indebtedness is to be liquidated in accordance with the terms of the policies and the certificates so issued. In other words, here *is a debt of the insurance companies to the beneficiaries* under the policies, to be liquidated by instalment payments, first of interest, and second of permissive withdrawals.

If the court in this case should prorate the taxes as prayed for and the court should thereby find that the beneficiaries under these insurance policies or the insurance companies are indebted to the executors for the amount determined by it, we do not think that any Pennsylvania court has *summary jurisdiction* to compel them to pay this debt, even though the alleged debt be due to the executors and the order is made for the purpose of reimbursing them for moneys they have paid out of the estate set up by the will. To hold otherwise would involve constitutional rights relating to trial by jury and invalidate the due process clause of both State and Federal Constitutions. If such legislation is sustained the effect will be to "draw into the court the trial and deter-

mination of all claims by decedents' estates against third persons": Appeal of Harrisburg National Bank, 84 Pa. 380, 385.

## IV.

Counsel in this case practically agreed at the time of the argument that the Act of July 2, 1937, P. L. 2762, does not provide for the apportionment of interest and penalties imposed by reason of the delay of the executors in making payment of said taxes, consequently we conclude that the amount claimed by them, amounting to $999.72 must be excluded from any computation which could be made in this case.

In accordance with the findings of fact and the above opinion we have come to the following

### Conclusions of law

1. That the orphans' court would have jurisdiction in this case to prorate taxes between the executors and the insurance beneficiaries if the will of George W. Crooks did not provide otherwise.

2. The will of George W. Crooks does provide otherwise, as set forth in paragraph 6 of his will.

3. Even though the orphans' court has jurisdiction in a proper case to enter a decree of tax proration between fiduciaries and beneficiaries under insurance policies, it does not have any jurisdiction to compel payment of any amount so found to be due, in a summary proceeding as to funds not in the possession of the executors or in the custody of the court.

4. So much of paragraph B of section 48.1 of the Act of July 2, 1937, as attempts to confer summary jurisdiction upon the orphans' courts of Pennsylvania for this purpose is unconstitutional and void.

### Decree

And now, May 20, 1939, in accordance with the findings of fact, and conclusions of law herein stated, the petition of the executors and the citation issued thereon

in this case is dismissed. The costs to be paid by the executors out of the funds of the residuary estate set up in the will.