## Harvey's Estate

Before Van Dusen, P. P., Stearne, Sinkler, Klein, Bolger, and Ladnerr, JJ.

*Ulric J. Mengert, Robert T. McCracken, George B. Clothier* of *Edmonds, Obermayer & Rebmann, Philip*

*A. Bregy, Cuthbert H. Latta, Jr., Roger Scattergood, Mark Wilson, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for exceptants.

*John Mulford, Cadmus Z. Gordon* of *Drinker, Biddle & Reath, William Nelson West, 3rd, Harold D. Greenwell, Eugene John Lewis* and *Maurice W. Sloan, Jr.,* contra.

*W. Horace Hepburn, Jr.,* for accountants.

KLEIN, J., January 22, 1943.—Decedent died October 21, 1939, leaving an estate valued at more than $2,000,000. His will dated May 2, 1936, contained: (1) Pecuniary legacies aggregating $235,000 "subject to the payment of the Pennsylvania State Inheritance Tax"; (2) specific legacies, the tax thereon to be paid out of residue; and (3) a residuary legacy in trust, the income to be divided by the trustees after deducting from gross income taxes and legal expenses thereon. At the audit the executors requested that a percentage of the pecuniary legacies be retained to permit apportionment of Federal estate taxes, which presented these two questions:

1. Does the Act of July 2, 1937, P. L. 2762, 20 PS §844, operate to require apportionment of estate taxes between pecuniary and residuary legatees?

2. If the act is applicable, did the testator direct in his will that estate taxes should not be apportioned?

The auditing judge ruled that the Federal estate taxes, including the part distributable to the State, are not apportionable and are to be borne wholly by the residuary estate. He reached the conclusion that the act was not intended to change the rule that an estate tax, like ordinary debts, is to be imposed on the residue and is not to be apportioned among pecuniary or specific legatees. He further held that there should be no apportionment because it was unreasonable to suppose that the decedent here intended any apportionment of estate taxes.

The first question, one of statutory construction, requires an analysis not only of the act, but of related legislation and the general background of the legislation. The second question is a narrow one involving construction of this will.

In the absence of legislation requiring apportionment, the courts have uniformly held that the burden of the Federal estate tax as between legatees and residue was upon the latter: Newton's Estate, 74 Pa. Superior Ct. 361 (1920); Matter of Hamlin, 226 N. Y. 407, 124 N. E. 4 (1919); Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N. E. 265 (1919). See also Young Men's Christian Association v. Davis et al., 264 U. S. 47 (1924), and Edwards, etc., v. Slocum et al., 264 U. S. 61 (1924), in which the Supreme Court, in dictum, recognized that the matter was one of State regulation.

In 1930 the New York legislature, pursuant to a recommendation of a commission appointed to investigate defects in the laws of estates, adopted legislation requiring apportionment of estate taxes: Decedent Estate Law, sec. 124. The commission in its recommendation said (p. 420):

"The principal objection to an estate tax has been that where the decedent dies leaving a will, and makes no provision therein to the contrary, the entire burden of the tax must be borne by the residuary legatee or legatees. Experience has demonstrated that in most estates the residuary legatees are the widow, children, or nearer and more dependent relatives. This has been one of the objections to the Federal Estate Tax Law in New York. The burden of the tax has been imposed upon the residuary legatees *not only as to the property passing under the will,* but also upon transfers whether by gift or inter vivos trust, or other form of transfer taking effect at death. These transfers are included both in the Federal Estate Tax Law and under the

proposed New York State Estate Tax Law as subject to taxation. Thus the residuary legatees have been compelled to pay the entire estate tax, including the tax assessed on testamentary transfers and those taking effect at death." (Italics supplied.)

It seems clear from the foregoing that the New York commission sought to obtain relief for residuary legatees not only from such portion of the estate tax as may be based on inter vivos trusts or other assets which are not part of the decedent's estate, but also from the share of the tax based on all legacies under the will.

In 1937 the act here involved, which is to all intents and purposes identical with the New York law, was adopted by our legislature without any discussion or debate. It is of interest to note that in the same year Maryland adopted an apportionment statute which clearly restricted the apportionment between "the individual estate of the decedent and the trust estate created, or transfers made, by the decedent in his lifetime so included in the gross estate": Maryland Code, Ann. (Flack 1939) art. 81, §126.

In construing the New York act, the lower courts of that State have ruled that the act requires the tax to be apportioned between pecuniary legatees and the residuary beneficiaries: Matter of Murdoch, 142 Misc. 186 (1931) ; Matter of Cronise, 167 Misc. 310 (1937) ; Mollenhauer's Estate, 257 App. Div. 286, 13 N. Y. Supp. (2d) 619 (1939). Although we are not bound by these decisions, since none of them is of the court of last resort in New York, nevertheless they are persuasive, particularly in view of the fact that the relief sought is from the application of a Federal taxing statute which applies with equal force to both Pennsylvania and New York.

That the bar of this Commonwealth considered the Pennsylvania act applicable as between legatees and the residue is seen in reports of the Committee on De-

cedent Estates and Trusts of the Pennsylvania Bar Association, which appear in 9 Pennsylvania Bar Association Quarterly 332 (1938), and 10 Pennsylvania Bar Association Quarterly 249 (1939).

With this background, the conclusion seems inescapable that the act was intended to be applicable as between legatees and residue. However, even if this background were absent, the text of the act is so clear and unambiguous as to make unnecessary any resort to extraneous aids in arriving at the legislative intent: Farmers-Kissinger Market House Company, Inc. v. Reading et al., 310 Pa. 493, 498 (1933) ; Narcise v. Eastern State Penitentiary, 137 Pa. Superior Ct. 394 (1939).

The statute provides that when a fiduciary has paid an estate tax the tax upon or with respect to any property required to be included in the gross estate should be "equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues."

The statute further provides:

"For the purposes of this section, the term 'persons interested in the estate' shall, with respect to both State and Federal taxes, include *all* persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest . . ." (Italics supplied.)

Nowhere in this statute can we find any language exempting pecuniary legatees from bearing their proportionate share of the estate tax. On the contrary, the act provides specifically that the tax shall be prorated among "all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of

a decedent . . ." It seems clear to us that pecuniary legatees are included in this broad definition.

The argument advanced by counsel challenging the constitutionality of the statute is clearly without merit, as the United States Supreme Court on November 9, 1942, has decided that the New York statute, which is practically identical with the Pennsylvania statute, does not contravene the provisions of the Federal Constitution: Riggs v. del Drago et al., 317 U. S. 95.

This leads to the second question as to whether the will contains a direction relieving the pecuniary legacies from apportionment of the estate taxes. The statute makes apportionment mandatory "except in a case where a testator otherwise directs in his will". We fail to find any such direction in the present will.

It has already been noted that the will contained three general references to taxation. The pecuniary legacies were made subject to the Pennsylvania State inheritance tax, the specific legacies were made free of the tax thereon, and the residue contained a reference to taxes in connection with the distribution of income.

As to the first type of reference it is contended, on the one hand, that following the rule of expressio unius est exclusio alterius the testator disclosed the intention that the pecuniary legacies were to be subject *only* to the payment of the Pennsylvania State inheritance tax even though the testator did not use the word "only". It is contended, on the other hand, that this is an expression made specifically with reference to the Pennsylvania State inheritance tax and, therefore, cannot be extended so as to apply to the Federal estate tax and the State portion thereof. As to the second type of reference in the will, the general word "tax" is used without any words of limitation. As to the third reference it is clear that it pertains in no way to taxes imposed against the estate, but rather taxes imposed on gross income.

In order to avoid apportionment under the terms of the statute, the testamentary direction must, in our opinion, be expressed in clear and explicit language or must be necessarily and unmistakably implied from the context of the instrument as a whole. See Jeffery's Estate, 32 D. & C. 5 (1938), affirmed in 333 Pa. 15. Equivocal language susceptible of more than one interpretation will not suffice to prevent the application of the legislative mandate. The present will is silent with respect to the question of apportionment of estate taxes. The fact that the testator made the pecuniary legacies subject to the State inheritance tax is not sufficient to overcome the requirements of the statute. The inferences we are asked to draw are of too negative a nature to establish the required statutory direction: Provident Trust Co. v. Scott et al., 335 Pa. 231, 235 (1939). We, therefore, conclude that the pecuniary legatees must bear their prorata share of the estate taxes.

In passing, we note that the act is anomalous in that it speaks of apportionment to be made "equitably". Yet it not only makes apportionment mandatory, but also provides the formula for the method of apportionment. See Jeffery's Estate, supra, where the court specifically leaves open the question whether an equitable doctrine of apportionment in contrast to the statutory doctrine may not be applied. We refer to the mandatory aspect of the apportionment to show that the legislative rule was intended to be applied unless there is a clear intention expressed or implied to the contrary. The New York law has been so interpreted: Klein's Estate, 25 N. Y. Supp. (2d) 869 (1941); McManamy's Estate, 172 Misc. 392, 15 N. Y. Supp. (2d) 270 (1939); Kaufman's Estate, 170 Misc. 436, 10 N. Y. Supp. (2d) 616 (1939); Walbridge's Estate, 170 Misc. 127, 9 N. Y. Supp. (2d) 907 (1939).

We are aware that the Act of 1937, which was enacted to correct what seemed to be an inequality in

certain cases, is so drawn as to create inequalities of a different nature in other cases. The act, however, is clear and we have no more authority to correct it than we had to correct the law as it was before its passage. See Uber's Estate, 29 D. & C. 341 (1937), affirmed in 330 Pa. 417. The difficulty arises from the fact that the Federal tax is a graduated tax based on the size of the gross estate, whereas the Pennsylvania statute apportions the tax so calculated among the distributees in proportion to the size of their respective shares. Thus, the tax on legatee A depends not only on what he receives, but also on the gifts to B, C, and D.

The exclusion of pecuniary and specific legacies from the apportionment would not cure the evil. It is easy to imagine a large testamentary estate and comparatively small funds forming part of the testator's gross estate by reason of a deed of trust, a gift in contemplation of death, an estate by entireties, the exercise of a power of appointment, insurance payable to third persons, etc. Under any plan which can be devised, the Maryland statute, for example, the recipients of these funds would suffer hardship similar to that suffered by the legatees in the present case.

It may be that a perfect statute cannot be drawn and that the remedy lies in more careful draftsmanship of testamentary instruments.

The exceptions are therefore sustained and the adjudication, as modified by this opinion, is confirmed absolutely.

LADNER, J., dissenting.—I dissent for the reasons set forth in my adjudication and for the following reasons not there discussed.

The apportionment statute of July 2, 1937, P. L. 2762, 20 PS §844, excepts from its operation cases "where a testator otherwise directs in his will". The majority opinion concedes, as it must in view of our

decision in Jeffery's Estate, 32 D. & C. 5, affirmed in 333 Pa. 15, that this means "the testamentary direction" required by the statute to prevent apportionment may be implied. But the opinion adds: "Equivocal language, susceptible of more than one interpretation, will not suffice to prevent the application of the legislative mandate". To that I do not agree, for it is in direct conflict with Jeffery's Estate, supra, where it was held that the phrase "to pay out of said trust fund all *costs, charges* and *expenses* of said trust estate and of the management thereof", etc., operated to charge the Federal estate taxes on the trust. Surely the words "charges and expenses" there used are words of equivocal import, but nevertheless were held to be reasonably susceptible of the interpretation which this court put upon them.

The language of the Act of 1937, viz, "except in a case where a testator otherwise directs in his will", is not novel in our statutory decedents' estates law. Similar language is found in our Wills Act of June 7, 1917, P. L. 403, in at least three places; section 15($a$) and 15($b$) (relating to lapses), and section 18 (relating to devises of mortgaged lands). There is no case where this language has ever been interpreted to mean that the direction must be of the kind the majority opinion asserts. On the contrary, in Hill's Estate, 87 Pa. Superior Ct. 173, interpreting section 18, which reads: "Unless the testator shall otherwise direct by his will, the devisee of real estate which is subject to mortgage shall take subject thereto, and shall not be entitled to exoneration out of the other estate of the testator, real or personal . . ."; it is ruled that it is *not* essential that the will should contain an express provision that the lands specifically devised shall not be taken subject to the payment of the mortgage debt; it is sufficient if the will, taken as a whole, clearly *implies* that such debt is to be paid out of other property.

This will makes it reasonably clear that the testator did not want his residuary legatees to be subjected to the Federal estate tax. The time-honored maxim expressio unius est exclusio alterius, frequently invòked in construction of wills (see Ritter's Estate, 10 Pa. Superior Ct. 352, 357, Levy's Estate, 1 Dist. R. 217, 219 (Penrose, J.), and Pepper's Estate, 21 W. N. C. 271, 275), applies. The testator here expressly directs that the pecuniary bequests are to be subject to the Pennsylvania State inheritance tax. Does he not thereby imply that they should be subject to no other tax? This implication is strengthened by the settled law that the State inheritance tax is imposed upon legacies unless exempted therefrom by express language or necessary implication: Brown's Estate, 208 Pa. 161, 164. When in the face of that settled rule the testator makes pecuniary legacies expressly subject to the State inheritance tax, he thereby necessarily indicates that they are to be subject to that tax, and *no other*. The express mention of the one tax implies the exclusion of the others. This is precisely the principle of Beilstein et al. v. Beilstein, 194 Pa. 152, where it was held that a devise over in case a daughter should die without leaving a family was an implied devise to her family if she should leave one; see also Bosworth's Estate, 35 D. & C. 588, affirmed in 337 Pa. 265.

The testator here left a $2,000,000 estate. Of this he gave $235,000 in pecuniary legacies, and bequeathed the residue of approximately $1,750,000 (after the life tenant's death) to charities. If the apportionment act is applied, it would serve to reduce each of the pecuniary legacies by as much as 40 percent for the benefit of the residue. I cannot believe that the testator ever intended such a result, or that the apportionment statute, enacted a year after the date of the will, which enjoins an equitable apportionment, was ever meant to be used for such a purpose. It overturns the settled principle of our law that pe-

cuniary legatees have a preferred or priority status over residuary legatees and they must be paid first in full and do not abate with residuary legatees.

While the foregoing construction of the will makes it unnecessary here to determine whether the apportionment act applies as between the general and residuary legatees taking under the same will, since the majority opinion has gone into that question I feel impelled to discuss it also. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, requires us in construing statutes to consider "among other matters— (1) the occasion and necessity for the law; . . . (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation".

The occasion, necessity, and mischief sought to be remedied by the Apportionment Act of 1937 is gleaned from the decisions which led to its enactment and are well known. The Federal estate tax is imposed upon all interests in property passing from a decedent whether by instruments of trust inter vivos, gifts in contemplation of death, insurance trusts, joint tenancy or entirety survivorship, or otherwise—all together being considered for Federal tax purposes as comprising one taxable subject. But the Revenue Act of February 26, 1926, 44 Stat. at L. 9, sec. 305, as amended, makes the executor primarily responsible for the payment of the whole Federal estate tax. The Government also has the power to collect the whole tax out of the most convenient or available fund and in such case reimbursement is provided for by the Federal act. In practice, however, it is usually the executor who is called upon to pay out of the decedent's estate passing under a will. Such payment was held properly chargeable to the residuary estate: Newton's Estate, 74 Pa. Superior Ct. 361. The Federal act provided for no reimbursement to the executor so that where the

greater part of the decedent's property passed by instruments other than his will the residuary estate was often depleted. This was the inequity that called for relief. Examples of the resultant injustices, never contemplated by the testators in question, are to be found in Ely's Estate, 28 D. & C. 663, and Uber's Estate, 29 D. & C. 341. In these cases the evident intent of a testator in his will to leave the bulk of his estate to his widow or children was defeated, not by the few specific or pecuniary legacies in the will, but by the Federal Government requiring the executor to pay the whole estate tax, including the transfers made entirely outside the will, depleting the residuary estate with no right to reimbursement. It was to correct *this* type of injustice that the Act of 1937 was passed and not to change the rule consistently observed in this State for over 100 years, viz, that the specific and pecuniary legatees have a priority status as compared with the residuary legatees. Indeed, it was Judge Bok in Ely's Estate, supra, who urged this legislation in his adjudication and called attention to the New York statute on the subject.

In ruling that the Apportionment Act of 1937 operates so as to require apportionment between the general and residuary legatees of a will the majority opinion says that it so decides because the act was copied from New York, and that the report of the New York Commission which drafted that law sought to obtain relief for the residuary legatees not only from portions of the Federal tax arising from inter vivos trusts or other transfers, but also from the share of the tax based on all legacies under the will. I do not so read the quoted portion of that commission's report. The object sought is not set forth by the phrase the majority opinion italicized, that is merely explanatory. It is the last sentence of the quotation which reads, "Thus the residuary legatees have been compelled to pay the *entire estate tax, including the tax as-*

*sessed on testamentary transfers and those taking effect at death"* (italics supplied), that states the object sought.

The majority of the court also feel bound to follow the New York cases cited as supporting their views. These cases in two instances are surrogate's decisions and none of them by a court of last resort. In Miller's Trust, 313 Pa. 18, 23, it is held that we are not bound to follow constructions of other State courts of statutes copied by our legislature unless the constructions be that of a court of last resort, and not even then if contrary to the course of development of our own law. It is also settled that courts of adopting States are not bound to accept constructions placed on a statute in cases decided *after* the adoption of the statute: 59 C. J. 1071, §629.

Of the three New York cases cited, only one of them —In re Murdoch, 142 Misc. 186 (1931)—was decided before our Act of 1937. In that case the surrogate, in a meagerly reported opinion, without setting forth reasons, construes the Apportionment Act of New York as entitling pecuniary legatees to an apportionment of the discount allowed by State law upon the payment of New York State taxes. The other two cases were decided in the years 1938 and 1939, respectively, after our statute of 1937 was enacted. Both assert, rather than decide, the extended application of the apportionment statute contended for in the majority opinion.

I would restrict the application of the statute to the situations which gave rise to it and not impute to the legislature an intention to change by indirection a well-known principle that has had public approbation for over a century and which the two learned commissions that revised the decedents' estate laws during that time left undisturbed.