## Jones' Estate

*Harry J. Alker*, for accountant and exceptant.

*Maxwell Strawbridge*, guardian and trustee ad litem
p. p.

HOLLAND, P. J., October 2, 1945.—At the audit of their account executors requested the court to determine what apportionment of Federal estate tax there should be, if any, among decedent's estate, a life insurance trust, and decedent's widow. Executors submitted copies of their Federal estate tax return and of correspondence with the Commissioner of Internal Revenue which set forth how the full amount of that tax was finally settled. They also suggested calculations of the amounts to be apportioned for each of the possible funds involved. Aside from the decedent's estate (the only fund actually in executors' hands) these other

funds are two: (1) The life insurance trust created by decedent in his lifetime, an account of which was before the court for audit concurrently with executors' account; (2) a bank account in the names of decedent and his surviving widow, of which she, of course, became sole owner upon his death and which was outside the estate.

In his will testator gave his residuary estate in trust for his widow, for life, with remainder to his descendants. A number of minor grandchildren are living and have a contingent interest in the remainder. There is also the possibility of further descendants being born before the remainder vests. To represent the living minors and unborn persons, Mr. Strawbridge was appointed guardian ad litem and trustee ad litem.

All parties in interest (including exceptant) or their representatives had actual notice from accountants, not only of the filing of the account and of the time and place of its audit, but also that the question of proration of Federal estate tax would be raised and submitted for adjudication. At the audit accountants submitted a written memorandum containing calculations of the proration in the alternative. The first alternative was on the basis of proration between the life insurance trust and all other taxable property. The second alternative was on the basis of proration among the life insurance trust, the joint property, and all other taxable property. Mr. Strawbridge, as guardian and trustee ad litem, submitted a written report and brief contending for proration among all three funds according to accountants' second alternative. No other party in interest appeared or contended otherwise.

The contention of the guardian and trustee ad litem appearing well-considered and supported by authority, being unopposed, and in exact accord with one of two alternatives suggested by accountants themselves, was adopted in the adjudication. The trustees of the insur ance trust (the same parties as accountants) were di-

rected to pay to themselves as accountants $40,243.78. Elizabeth T. Jones, decedent's widow and now sole owner of the taxable entireties bank account, was ordered to pay accountants the sum of $2,789.12. That left $218,236.75, the balance of the entire Federal estate tax already paid by accountants, the amount to be borne by the estate.

Exceptions to the adjudication were filed by Elizabeth T. Jones asserting error in directing her to pay any part of the Federal estate tax, and in having failed to adopt accountants' first alternative suggestion. Thereby the tax would have been prorated entirely between the life insurance trust and decedent's estate.

The contention now advanced is that proration under the second alternative suggested by accountants and adopted in the adjudication is untenable because the so-called Proration Act of July 2, 1937, P. L. 2762 (which added section 48.1 to the Fiduciaries Act of June 7, 1917, P. L. 447), did not become effective until after decedent's death on April 7, 1936. While the Revenue Act of February 26, 1926, was in effect when decedent died, it is pointed out that section 314(b), which provided for proration of Federal estate tax, applied only to the proceeds of life insurance and not to joint property. Thus while the Revenue Act is sufficient to sustain proration of part of the tax to the life insurance trust, proration to the joint property is left without applicable statutory authority.

Possible inapplicability of the Proration Act was considered in the report of the guardian and trustee ad litem. He relied on Jeffery's Estate, 333 Pa. 15 (1939), to support his conclusion that decedent's death prior to the effective date of the act did not render it inoperative here. Exceptant contends that Jeffery's Estate, supra, is to be distinguished because the property there included as part of the gross estate for Federal estate tax purposes consisted of trusts inter vivos, whereas here it is property owned by decedent and ex-

ceptant by entireties. There the question of proration was raised upon accounts of the trusts inter vivos filed after decedent's death. In considering whether the Proration Act applied (the act became effective after the accounts were audited but before the adjudications were filed), Mr. Justice Linn said, inter alia (333 Pa. 15, 20) : ". . . the transition of title resulting from the adjudication was therefore not complete . . .". Pointing out that here the transition of title of the entireties' property was complete by operation of law the instant that decedent died, without the necessity of first accounting for it and awarding it, exceptant submits that Jeffery's Estate does not control.

Granting the difference in the kind of property involved in the two cases, and that the particular clause of the opinion above quoted does not fit these facts, we are not persuaded that that clause represents the sine qua non of the Supreme Court's decision in that case. Mr. Justice Linn examined the Proration Act minutely in search of reference points with respect to time. Before and in addition to the quoted clause, he said (p. 20) :

"We think the legislature intended that it should apply to existing proceedings as the following words show: 'Whenever [on or after July 2, 1937, the date on which the Act became effective] it appears upon any accounting or in any appropriate action or proceeding that [any accountant] . . . has paid an estate tax . . . the amount . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues . . .'

"On the date when the act became effective the adjudication had not been made; the transition of title resulting from the adjudication was therefore not complete; the proceeding was pending; the estate tax had been paid by a fiduciary. The record therefore presented facts squarely within the words of the statute

requiring the tax payment to be 'equitably prorated among the persons interested . . . to whom such property is or may be transferred,' the testator not having directed otherwise.

"It is well settled that such interpretation of the statute does not take away vested rights in violation of constitutional limitations: [citing cases] . . . It is not important to consider whether it should be classified as retroactive or prospective; its terms show that it was clearly and manifestly intended to be applied to facts such as appear in the record."

Upon considering the whole opinion in Jeffery's Estate it becomes apparent that the only part not on principle applicable here, too, is the clause singled out by exceptant. Indeed, there is nothing in the act on the subject of transition of title, so instead of being the cornerstone, the clause would appear to have been merely added as a supporting factor. Paragraph three of the syllabus covers that part of the case having a bearing here, yet omits mention of incomplete transition of title as a factor at all, much less as the decisive one. In our opinion Jeffery's Estate controls this case.

But even if we read Jeffery's Estate incorrectly, there is another reason for the same conclusion. Exceptant's argument assumes that but for some statutory authority proration would be legally impossible. Two recent decisions of the Supreme Court of Pennsylvania show that assumption to be unwarranted. In both Mellon Estate, 347 Pa. 520 (1943), and Moreland Estate, 351 Pa. 623 (1945), it is recognized that the doctrine of equitable contribution applies and is enforcible by the orphans' court quite apart from any statute. The Proration Act does not create new substantive rights, but merely spells out those already existing and implements their enforcement by giving the orphans' court jurisdiction over the persons found liable to pay the prorated portions. That extension of jurisdiction, to include persons who otherwise might

not be before the court and who as ordinary debtors to the estate would not be subject to its jurisdiction, is the only new feature in the act. Ely's Estate, 28 D. & C. 663 (1936), cited by exceptant as authority that proration is not available in the absence of statute, must be taken as overruled by the Mellon and Moreland cases. While not mentioned by name, doubtless Ely's Estate was one of lower court decisions referred to in Mellon Estate, 347 Pa. 520, 536 (1943), which "have cast doubt upon the right of contribution for estate taxes", and the reasoning in which is rejected as unsound.

And now, October 2, 1945, the exceptions of Elizabeth T. Jones are dismissed, and the adjudication is confirmed absolutely.