In the Matter of the ESTATE of Angie V. RAWLINS, Deceased.

George R. STRINGFELLOW, Administrator with Will Annexed, Plaintiff and Appellant,

v.

Geralee F. GARDNER and Howard D. Gardner, Defendants and Respondents.

No. 15586.

Supreme Court of Utah.

Nov. 29, 1978.

---

Orval C. Harrison, Salt Lake City, for plaintiff and appellant.

Robyn O. Heilbrun, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

George R. Stringfellow, administrator and principal beneficiary of the estate of Angie V. Rawlins (to the extent of about $415,000 or about 90 percent of the $460,000 estate) sought to have the defendants Gardners (who received about 10 percent of the estate, about $42,000) bear their proportionate share of the inheritance taxes. From a summary judgment denying that petition, plaintiff, Stringfellow appeals.

The assets which the plaintiff received were probate assets passing under the terms of the decedent's will. The share which went to the Gardners were non-probate assets which passed to them by joint tenancy and trust arrangements.

Mrs. Rawlins died testate on April 8, 1976, when our former probate code was still applicable.[1] In August of that year, plaintiff filed a petition for probate of her will. In January 1977, plaintiff became Administrator With Will Annexed.

Under our law as it existed prior to the adoption of our Uniform Probate Code,[2] it was the duty of the district court to determine all questions relating to the payment of inheritance taxes.[3] The net estate, (the gross estate minus certain deductions[4]) which include both probate and non-probate assets, was the property upon which such taxes were based, and the taxes were a lien on the whole of such property from the time of death.[5] In order to insure the payment of the taxes, it was held that the district court could order the executor (or administrator) to pay the taxes solely from

1. Titles 74 and 75 of U.C.A., 1953.

2. Enacted by Chapter 150 of the Utah Session Laws of 1975 now designated as Title 75, superseding principally Titles 74 and 75, U.C.A., 1953.

3. U.C.A., 1953, 59–12–35.

4. U.C.A., 1953, 59–12–7.

5. U.C.A., 1953, 59–12–24.

the property he was in charge of (i. e., the probate assets [6]). However, it was also held that in appropriate situations, in the exercise of the equitable powers the court has in probate matters, it could order the non-probate beneficiaries to make equitable contribution to the payment of the taxes.[7] In regard to such situations, Sec. 75–3–916 of our new code provides for apportionment of the inheritance taxes:

\* \* \* \* \* \*

(2) Unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. . . . in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interest of all persons interested in the estate. . . .

In September 1977 the plaintiff filed the instant petition requesting that the court apportion the inheritance taxes in accordance with Sec. 916 just quoted. Defendants filed their objections thereto. Their contention is that the inheritance taxes should be paid by plaintiff out of the probate assets in accordance with the law which was in effect at the time of the decedent's death; and that there is no equitable or other basis shown to justify apportionment. They also filed an affidavit stating that in December 1976, the parties had stipulated that the administrator would pay the inheritance taxes out of the probate assets, thus out of plaintiff's share.

Upon the basis of the facts shown by the pleadings and submissions the trial court granted defendants' motion for summary judgment, the effect of which is to require plaintiff to pay the inheritance taxes out of the probate assets, and to relieve the defendants from the obligation to pay any part thereof.

Plaintiff has made the fairly common mistake of taking one provision of law in isolation and assuming that it states all of the law on the subject, whereas the correct procedure is to consider all of the statutes

bearing on the problem and, unless there is irreconcilable conflict, give them all effect if possible. Included in the new probate code is Section 75–8–101.

Time of taking effect—Provisions for transition.—

(1) This code takes effect on July 1, 1977.

(2) Except as provided elsewhere in this code, on the effective date of this code:

\* \* \* \* \* \*

(b) The code applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent *except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice* or because of infeasibility of application of the procedure of this code. . . [Emphasis added.]

■ It is obvious that by including Section 101 as part of the code, the legislature intended that the apportionment provided for in Sec. 916 need not be rigid and absolute where ". . . in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice." Among the purposes of the new probate code is to make the total of the decedent's assets available to assure that the inheritance taxes are paid, whether they pass through probate proceedings, or in some other manner, such as joint tenancy or trust arrangements. Further, it also provides a safeguard against possible inequities where some beneficiaries may receive a large share of an estate as non-probate assets without sharing in the tax liability. Consistent with the foregoing, the new code allows the court some latitude of discretion, as was true under the former law, where the ends of equity and justice are best served thereby.

■ In analyzing the plaintiff's charge that the trial court erred in refusing to require the defendants Gardner to pay a portion of the inheritance taxes, there are

**6.** U.C.A., 1953, 59–12–30.

**7.** *In re Jeffery's Estate*, 333 Pa. 15, 3 A.2d 393.

certain facts which the court could have regarded as supporting his conclusion. Among them are that the death of Mrs. Rawlins had occurred in April 1976 and title to her property had passed to her heirs more than a year prior to the effective date of our new probate code. In fact the probate proceedings had been instituted and a major part thereof completed, including the inventory had been filed and the appraisal had been made and the income tax report had been completed prior to that date. It was not until September 1977, after the effective date of the new probate code, that the administrator filed the instant petition. The district court could consider all of the foregoing in conjunction with the fact that the plaintiff administrator receives about $415,000 or 90 percent of the estate through the probate proceedings, whereas the defendants Gardners receive about $42,000 or 10 percent of decedent's assets, through the non-probate method.

■ Another matter which requires attention is plaintiff's assertion that the trial court committed error in granting summary judgment on facts which he elicited by asking questions of counsel during the oral argument. We can see neither any impropriety nor prejudice to the plaintiff in that procedure. It is to be assumed that counsel are there to represent the interests of the respective parties and to assist the court in understanding the issues of fact and the law applicable thereto; and that they will give truthful answers to his questions relating to those issues. In this instance plaintiff's counsel made no objection to the questions and answered them without hesitancy. Coupled with the foregoing is the fact that it is not shown that the responses elicited indicated anything other than the basic pattern of facts as contended by the parties, nor that they had a material bearing upon the court's ruling.

■ The final matter to which we direct our attention is plaintiff's contention that the summary judgment was improperly granted because there was a disputed issue of fact as to whether plaintiff had entered into the stipulation hereinabove referred to, that he would pay the inheritance taxes out of the probate assets. In respect thereto several observations are pertinent. It was in the affidavit of the defendant that the claim of such a stipulation was asserted. But no such stipulation was ever presented to the trial court; and there is no indication whatsoever that he relied on any such claimed stipulation in making his ruling. On the contrary, from the statements made by the court in analyzing the contentions of the parties it affirmatively appears that the court did not consider or place any reliance upon the claimed stipulation in arriving at his stated conclusion that ". . . in the interests of justice . . . in the opinion of the court, the former procedure should be made applicable . . . ." That is, that the defendants should not be required to participate in payment of inheritance taxes.

Upon the basis of the facts as recited herein and the principles of law as applicable thereto we are not persuaded that the trial court committed error, or so abused its discretion in rejecting plaintiff's petition that we should disturb the judgment.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, J., concur.

HALL, Justice (dissenting):

The majority of the Court relies upon the Utah Uniform Probate Code [1] as providing for the first time the apportionment of inheritance taxes. Actually Section 75–3–916(2) thereof which is specifically relied upon is neither innovative in substance nor effect in regard to apportionment. It added nothing at all to then existing law and merely reiterated the apportionment provision previously set forth in Chapter 12, Title 59, U.C.A., 1953, which dealt generally with

1. Title 75, U.C.A., 1953, as amended in 1977.

the subject of inheritance tax and those responsible for its payment.[2]

It is readily conceded that the former probate code [3] did not specifically treat the matter of apportionment, one way or the other. However, it was not necessary to do so for apportionment has historically been provided for by said Title 59 of our code. Specifically, U.C.A., 1953, 59–12–31, which dates back to 1901, provides as follows:

59–12–31. Duties and liability of grantees and survivors.—All executors and any grantee under a conveyance and any donee under a gift made in contemplation of death, or intended to take effect in possession or enjoyment at or after the death of the grantor, vendor or donor, and any *survivor or survivors taking title by right of survivorship, shall be respectively liable for all taxes to be paid by them respectively*, with lawful interest as hereinafter set forth, until the same shall have been paid. [Emphasis added.]

In light of the foregoing, I draw what appears to be the inescapable conclusion that the statutory provision [4] relied upon by the majority of the Court as affording the trial court with *discretion* in this matter has absolutely no application to the facts of this case. This is so because there was no different "former procedure" to apply "in the interest of justice." The former procedure *was* and *is* identical to the *present* procedure. Apportionment was formerly provided for by virtue of the inheritance tax provisions of the code [5] and is now provided for by the Uniform Probate Code.[6]

The trial court had no discretion in regard to apportionment, and I would therefore reverse, remand and direct that judgment requiring apportionment be entered in favor of plaintiff, as a matter of law.

WILKINS, J., concurs in the views expressed in the dissenting opinion of HALL, J.

2. The fact that Chapter 12 of Title 59 is superseded in some instances by Chapter 12A is not material here.

3. Title 75, U.C.A., 1953, as it existed prior to the 1977 amendment.

4. U.C.A., 1953, 75–8–101(2)(b), as amended.

5. U.C.A., 1953, 59–12–31, supra.

6. U.C.A., 1953, 75–3–916(2), supra, as amended.