Wright Estate.

Argued June 3, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Oscar M. Hansen*, with him *Arthur Littleton, Richard K. Stevens, Morgan, Lewis & Bockius* and *Stradley, Ronon, Stevens & Young*, for residuary legatees.

*Cuthbert H. Latta*, with him *William C. Chase* and *Barnes, Dechert, Price, Myers & Rhoads*, for pre-residuary legatee and devisee.

OPINION BY MR. CHIEF JUSTICE JONES, January 22, 1958:

Abram K. Wright died June 15, 1951, at the age of 82. He had lived in the borough of Clearfield all of his life, had never married, and left no close rela-

tives to survive him at his death. His gross estate exceeded $2,600,000 and had a net worth (after debts and administration expenses but before death taxes) of $2,450,000 which the decedent disposed of by a will executed approximately six months before his death.

The primary object of Mr. Wright's testamentary bounty is Miss Ruth S. Spence, who served him as secretary for the last 31 years of his life. Under his will she is to receive a cash legacy of $75,000, stocks of a value at the date of the decedent's death of $33,500, a life estate in a trust of other stock worth about $14,-000, the decedent's house in Clearfield with its furnishings, his automobile and various tracts of coal lands. The largest beneficiaries under the will, in amount, are the two residuary charities, viz., Princeton College and University of Princeton, New Jersey, and the Presbyterian Hospital in Philadelphia, each of which is bequeathed a pre-residuary gift of $65,000 in stocks and one-half of the residuary estate as a memorial to the decedent who, incidentally, never went to college.

It was Miss Spence's contention in the court below that the whole of the death taxes (state and federal) should be borne by the decedent's residuary estate whereas the residuary charities contended that each beneficiary, whether individual or charitable, should bear his or its own state inheritance tax but that the federal estate taxes should be apportioned in accordance with the Estate Tax Apportionment Act of 1951, with the result that, by virtue of Section 4(b)4 of the Act, the entire burden of the federal estate taxes would fall upon the individual legatees and devisee notwithstanding that 46% of the federal estate tax was generated by the gifts to the charities.

The auditor held each of the testamentary gifts to be subject to deduction for the state inheritance tax but imposed the federal estate taxes on the residuary

estate. Both Miss Spence and the residuary charities filed exceptions to the auditor's report. The court dismissed all of the exceptions, confirmed the report and entered a final decree accordingly from which both Miss Spence and the residuary charities have severally appealed.

The apportionment for which the residuary legatees argue would place the whole of the federal estate tax burden, amounting to $118,116.43, upon the individual legatees and devisee although $54,448.72 of such taxes was generated by the gifts (pre-residuary as well as residuary) to the charities.* The effect of the residuary legatees' contention, if adopted, would be that Miss Spence, to whom the testator willed cash, stocks, and realty of a total approximate value of $152,000, would receive but $74,758, the other $77,903 going for taxes, of which amount $30,437 represents federal estate tax attributable to the charitable gifts. The same relativity is equally true of all of the testator's bequests *to individuals*. For example, a person bequeathed a legacy of $1,000 (the will actually contains ten such legacies) would receive but $490 net. Of course, these comparisons do not of themselves determine what the testator's intent was with respect to the charge for death duties but the highly inequitable results, which they portray, are relevant and material as depicting a situation which, judging from the will as a whole, the decedent can hardly be thought to have intended.

Undoubtedly Mr. Wright was well aware that the state and federal taxes on his estate would be large

---

* The portion of a charitable gift which is deducted for state inheritance tax is not an allowable deduction for federal estate tax purposes and, hence, contributes, pro tanto, to the federal estate taxes: *Harrison v. Northern Trust Company*, 317 U. S. 476.

even though he was bequeathing roughly nine-tenths of his property to charities. He had been well acquainted with the existence of taxation during his lifetime. It is stipulated of record that he "was highly successful, being at one time the largest shipper of coal" in the region, and that, upon withdrawing from the coal business in 1937, "thereafter his chief business activity consisted of managing his investments, which were composed mostly of high grade common stocks." The supplemental record filed with these appeals upon stipulation of all counsel shows that the decedent's executors paid $23,330.77 as his income tax liability for the five and one-half months of the year 1951 up to the time of his death on June 15th. His liability for a whole year's income, on its graduated basis, must have been several times that amount.

It is, of course, true as the residuary charities emphasize that the state inheritance tax is ordinarily deducted from the distributive shares of the beneficiaries of a decedent's estate. Section 16 of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2352, expressly so provides. The tax is on the beneficiary's right of succession to, or the privilege of receiving, either by will or under the intestate law, property possessed by a decedent at his death: *Shugars v. Chamberlain Amusements Enterprises, Inc.*, 284 Pa. 200, 205, 130 A. 426. But, it is also well established that a testator may direct, either expressly or by necessary implication, that his testamentary gifts shall be awarded to his beneficiaries without deduction for the state inheritance tax. *Brown's Estate*, 208 Pa. 161, 164, 57 A. 360; *Spangenberg Estate*, 359 Pa. 353, 355, 59 A. 2d 103. Indeed, a decedent's relief of his beneficiary from any deduction on account of state inheritance tax on his legacy may rest *solely* upon testamentary implication. The residuary appellants do not question

that. The important inquiry in any instance is whether the language of the will involved implies an intent to such effect.

The requirement of a like testamentary direction or indication in order to place the burden of the federal estate taxes on the residuary estate grew out of this State's first apportionment Act (1937), which was superseded and repealed by the present Estate Tax Apportionment Act of August 24, 1951, P. L. 1405. The Act of 1951, just as its predecessor had done, provides for the apportionment of the federal estate taxes among the persons interested in the property included in the gross estate but confirms to a testator the right to determine by his will how the federal taxes on his estate are to be borne. In construing the Act of 1937, this court held that its effect was to create a presumption (and the conception continues to obtain under the Act of 1951) that a testator intends to have the Act's provisions apply to his estate, recognizing, however, that the presumption prevails "unless there is in the terms of the will some provision which is clearly inconsistent with such construction, and, when the will is construed as a whole, will override it." *Harvey Estate,* 350 Pa. 53, 56, 38 A. 2d 262; *Edwards Estate,* 377 Pa. 606, 608, 105 A. 2d 312.

Unlike the state inheritance tax, however, the federal estate tax is a tax upon the transmission of a decedent's property to others upon his death: *Riggs v. Del Drago,* 317 U. S. 95, 97, 98. The incidence of the federal estate tax is upon the property of the decedent: *Mellon Estate,* 347 Pa. 520, 532, 32 A. 2d 749. The contrast between the respective incidences of the two kinds of death duties (i.e., a succession or legacy tax on the one hand and a transmission or estate tax on the other) was learnedly elucidated by Mr. Justice

(later Chief Justice) WHITE in *Knowlton v. Moore,* 178 U. S. 41. In *Newton's Estate,* 74 Pa. Superior Ct. 361, 365, that Court accepted what had been "so clearly stated" in *Knowlton v. Moore,* supra, as "the principles to be applied in determining where the burden [of estate taxes] must rest" and then cogently declared, "Probate or estate duties, tax the interest which ceased by reason of death, not the interest to which some person succeeds on a death. It is a charge upon and is payable out of the general revenue of the estate." Such was the applicable rule at the time of the creation by the Act of 1937 of the presumptive testamentary intent with respect to apportionment. Estate taxes had uniformly been paid out of and charged to the general funds of the decedent's estate in the absence of testamentary direction otherwise: *Edwards Estate,* supra. It is clear, therefore, that it is only the legal fiction created by the Apportionment Act as to its own presumed applicability—a presumption which can be overcome by testamentary implication alone (*Edwards Estate,* supra)—that brings about any controversy concerning the charging of the decedent's federal taxes to his general estate.

The question, then, is, what did the testator intend, as disclosed by his will, the intent being permissively ascertainable from implication no less than from express direction.

A study of Mr. Wright's will reveals a donative scheme which is utterly inconsistent with the idea that the gifts to the pre-residuary legatees and devisee were to be subject to deduction for any death taxes in connection with the decedent's estate.

The decedent's testamentary dispositions fall into three classes, (1) pre-residuary gifts to individuals totaling approximately $273,000, (2) pre-residuary gifts to charities aggregating $269,000, and (3) a gift

of the residue, amounting substantially to $1,918,000, to two charities which are also pre-residuary pecuniary legatees in large amounts.

The will contains 60 consecutively numbered Items, followed by two unnumbered Items and a concluding paragraph. The first 55 Items make specific bequests and devises of approximately $276,000 to a number of individuals and bequests aggregating $265,000 to charitable and other federally tax exempt organizations. By Item 56 the testator empowered his executors "to borrow money to pay any debts or pay any taxes if [the executors] decide the time is not right for the selling of [testator's] securities in paying [his] bequests and debts." Finally, by Item 60, he devised and bequeathed his residuary estate in equal shares to the Presbyterian Hospital in Philadelphia, and Princeton College and University. The other numbered Items (57, 58 and 59) and the two unnumbered Items and concluding paragraph, have no bearing on the question of testamentary intent relative to the payment of death duties in the settlement of the decedent's estate save for one of the unnumbered Items to which reference will hereinafter be made.

We think the decedent's will clearly evidences an intention that the pre-residuary legatees and the devisee were to receive their testamentary gifts without diminution for any of the death duties incident either to the transmission of the decedent's property at his death or to the beneficiaries' receipt of it.

By Item 1 of his will Mr. Wright gave and bequeathed to Miss Ruth S. Spence, his secretary, the sum of Seventy Five Thousand ($75,000.00) Dollars. By Item 2 he gave to a named bank in trust, 200 shares of Allied Chemical and Dye Co. common stock to pay the dividends therefrom to Miss Spence quarterly, for the duration of her life, with remainders over in the corpus

to the children of two named individuals. The testator also devised to Miss Spence (Item 47) his one-half interest in certain coal lands; bequeathed to her (Item 48) his stock and all of his interest in a specified coal company; devised to her (Item 49) his other coal lands in Clearfield County; gave her (Item 52) his house and lot in Clearfield and by Item 53 all of the furnishings of his house, his automobile, and silverware of all kinds; by Item 54, he ordered and directed his executors to employ Miss Spence for a period of three years to do the clerical work in connection with the management and settlement of his estate at a salary of $200 per month and expenses; and, by Item 55, he gave and devised to her all his coal lands in Decatur Township, Clearfield County, and his lots in Hyde, Pennsylvania. It is not open to reasonable question that Miss Spence, was indeed, the primary object of Mr. Wright's bounty. His concern for her and her future welfare, following her 31 years of faithful service in his employment down to the time of his death, stands out in the will in bold relief. Yet, although the decedent's testamentary gifts to Miss Spence aggregated all told approximately $152,000, the residuary charities would take from that amount slightly more than half toward paying the state and federal death taxes including even the federal taxes on the gifts to the charities. As the will clearly indicates, that is not what the testator intended.

In many instances among the pre-residuary Items, the testator bequeathed to the particular beneficiaries so many *dollars* "in stocks at the market value at the time of [his] death." Obviously, where this is the form of bequest utilized, it would not be possible to deduct therefrom for the state inheritance tax or an apportionment of estate taxes and, at the same time, give the beneficiary the quantum of stock which the

will expressly directs he shall receive. Such was the form of the testamentary gift in no less than 21 separate Items including a legacy of $65,000 "in stocks at the market value at the time of [testator's] death" to the Presbyterian Hospital of Philadelphia and a bequest in like amount and like terms to Princeton College and University. It was, moreover, the form of bequest utilized by the testator in his pre-residuary gifts to a number of other charities as well as in sixteen bequests to individuals in amounts ranging from $2,000 to $25,000. However, a bequest of so many dollars "in stocks at the market value at the time of [testator's] death" was not the exclusive form of gift used by the testator. There are eighteen Items containing bequests to individuals of *sums* of money ranging variously from $1,000 to $4,000 in addition to the $75,000 bequest to Miss Spence in Item 1.

The discrimination thus exhibited by the testator in making bequests "in stocks" to certain legatees and sums in money to others was no mere fortuity. He well recognized what he had done in such regard and had so intended. In the first unnumbered Item, immediately following Item 60, he expressly directed that "In every bequest of stock hereinabove contained, my Executors shall have the sole right to determine the nature and kind thereof to be delivered to the beneficiaries." It is clear, therefore, that the bequests "in stocks" in fixed amounts were to be paid *in stocks* at a market value on a date certain. What, then, did the donative scheme of bequests "in stocks" *necessarily* import? It meant, for example, that, in the case of a gift of "Five Thousand ($5,000.00) Dollars in stocks at the market value at the time of [testator's] death", the number of shares actually received by the beneficiary would be $5,000.00 worth, appraised according to the price and at the time testamentarily specified,

and not $4,500.00 worth of stock after deduction for the state inheritance tax or, even worse yet (in the case of an individual beneficiary), merely some $2,400.00 worth of stock, after further deduction for an apportionment charge for federal estate taxes.

The same testamentary implication is equally applicable to the 200 shares of Allied Chemical and Dye common stock which, by Item 2, the testator placed in trust with a bank for Miss Spence's enjoyment of the dividends therefrom for her life. There is not the slightest justification for an inference that the testator contemplated that Miss Spence would receive the dividends from only 104 shares of such stock, which is all that the trust would embrace after deduction, as urged by the residuary legatees, for the state inheritance tax and an apportionment charge for federal estate taxes; nor is it to be inferred that a corpus of 104 shares was all that the remaindermen were ultimately to receive under the testator's carefully prescribed provision in that connection.

What the form of the testator's donative pre-residuary dispositions plainly implies as to their freedom from both inheritance and estate taxes, the ordinal scheme of the will fully confirms. In its first 55 Items, the will contained the testator's pecuniary legacies and specific bequests and devises with provisions which made impossible in many instances deductions therefrom if the testator's clearly expressed benefactions were to be given the effect which his plain language contemplates. Following that, in Item 56, he correlated the payment by his executors of his debts and any taxes. The important thing here is the ascription of taxes to debts in the testator's thinking. After the pecuniary legacies and specific bequests and devises had been segregated, impliedly free of taxes, in the first 55 Items of the will and payment of the estate debts, including

taxes, had been reckoned with in the 56th Item, what then remained of the testator's property constituted the residue which he forthwith devised and bequeathed to the Presbyterian Hospital in Philadelphia and Princeton College and University, in equal shares. If that was not what the testator deliberately intended, then why would he bother to bequeath pre-residuary legacies of $65,000 "in stocks" to each the Presbyterian Hospital and Princeton College and University?

It is fundamental that the construction of a will which renders portions of it idle or nugatory is not to be preferred to one which makes every word operative: *Horn Estate*, 351 Pa. 131, 136, 40 A. 2d 471. If the contention of the residuary charities were to be accredited, neither rational nor useful purpose would be subserved by the testator's having first made pre-residuary gifts in large amounts to each of the two charities that were to share his entire residuary estate. The testator might just as well have omitted the $65,000 pre-residuary gifts to the Presbyterian Hospital and Princeton University and have confined his benefactions to them to the residue which would then have embraced additionally the $130,000 if not pre-residually bequeathed. The construction which the individual appellant advocates "makes the whole will harmonious and accomplished the primary intent of the [testator]" which in *Calder's Estate*, 343 Pa. 30, 38, 21 A. 2d 907, was deemed "much more important."

The decree of the court below will be modified by charging the Pennsylvania inheritance taxes against the residuary estate in relief of the pre-residuary pecuniary and specific legatees and devisee just as the decree does with respect to the federal estate taxes.

As so modified, the decree is affirmed at the estate's cost.

Mr. Justice BENJAMIN R. JONES concurs in the result.

DISSENTING OPINION BY MR. JUSTICE BELL:

This is another example of the axiom: "Hard cases often make bad law". It seems necessary to add that it is not within the province of a Court, desirable as that would sometimes be, to alter, ignore or rewrite a will (or an Act of the Legislature), or to conjure up an imaginary testamentary intent, in order to make what we are all convinced would be a more equitable and more desirable distribution of a testator's estate.

Mr. Wright, the testator, died on June 15, 1951, at the age of 82, leaving a will dated November 1, 1950, which was duly probated. Mr. Wright never married and left no close relatives. His gross estate amounted to approximately $2,600,000; his net estate for distribution, before payment of Pennsylvania Inheritance taxes, Federal Estate taxes, and Canadian Succession taxes, totaled approximately $2,460,000.

The will, inclusive of dispositive and administrative provisions, contained 60 numbered items and 3 additional items which are not numbered. In the first 55 items he made pecuniary bequests and specific devises totaling approximately $273,000 to a large number of individuals, and bequests of $269,000 to charities and other organizations. In Item 60 testator gave the residue "not hereinbefore bequeathed", to Presbyterian Hospital and Princeton University, in equal shares as memorials to himself. The residue totaled approximately $1,918,000.

Testator provided inter alia:

"Item 11:—I give and bequeath to Mrs. Emily Kerr TEN THOUSAND DOLLARS ($10,000.00) in stocks at the market value at the time of my death."

"Item 26:—I give and bequeath to Rev. L. A. Owens, a Methodist Minister, formerly of Bellefonte, Pa.; the sum of TWO THOUSAND ($2,000.00) Dollars."

"Item 27:—I give and bequeath to the Reedsville Chapel, Clearfield, Pa., the sum of TWO THOUSAND ($2,000.00) Dollars."

The above mentioned bequests are typical of the 40 bequests made throughout his will with this exception. He also made additional gifts to Miss Ruth S. Spence, his secretary—for example in item 1 the sum of $75,000 absolutely; in item 47 one-half of certain interests in coal lands; in item 48 his shares of stock in a coal-mining company; in item 49 all his coal land in Penn Township, Clearfield County; in item 50 the sum of $2,000; in item 52 his house in Clearfield; in item 53 all his furniture and his automobile. These gifts to Miss Spence totaled $160,008.

Testator then provided: "Item 56:—I give power to my Executors to *borrow money* to pay any debts or pay any taxes if they decide the time is not right for the selling of my securities, in paying my bequests and debts. The Executors to consult with Mr. Clinton A. Lutkins of New York City on condition and time to sell securities."

It will be noticed immediately that the will contains no provision that the gifts of pecuniary legacies, or specific legacies or devises were to be free and clear of Pennsylvania Inheritance tax; nor did it contain any provision imposing said taxes upon the residuary estate; nor was there any provision directing by whom the Pennsylvania and Federal death taxes should be paid.

It is hornbook law that an absolute gift of a pecuniary legacy in a fixed amount of money* ($100, $500, $5,000, $50,000), or a specific legacy* or devise, does

---

* It does not make any legal difference whether the bequest to named legatees of $10,000 in stocks at the market value at the time of his death, is considered to be a legacy in the amount of $10,000 or a specific legacy.

*not* show an intent upon the part of the testator to give the legatee the *full* amount of the bequest or the specific property *free* of the Pennsylvania Inheritance Tax, or to impose said tax upon the residuary estate.

Every careful lawyer who is even slightly familiar with the law pertaining to wills, knows that if a testator wants to give a legatee the full amount of his pecuniary legacy, or a specific legacy or devise, *free and clear* of the Pennsylvania Inheritance Tax, he should specifically add such words at the end of each such bequest, or he should specifically cover it in an all-inclusive, clearly expressed tax provision in a subsequent part of the will. Wright's will did not contain any such provision.

The Commonwealth of Pennsylvania imposed a flat 10% collateral inheritance tax on each beneficiary, based upon the amount of her, his or its legacy or devise. The total inheritance taxes (after deduction of a 5% discount) amounted to $232,208. The Federal estate tax return was filed by the executors on July 7, 1952, and a Federal estate tax of $118,116 was then paid. The Federal estate tax return was prepared and filed by the executors on the theory that the Pennsylvania Estate Tax Apportionment Act of 1951 (discussed infra) applied to the computation of the tax, and that *all* the Federal estate tax would be apportioned among and between the *non*-charitable beneficiaries. This theory was accepted by the Federal authorities.

The Federal estate tax was assessed and paid on the amount of the individual legacies, *plus the 10% Pennsylvania Inheritance Tax which was paid on the charitable specific and residuary gifts.* This was in accord with *Harrison v. Northern Trust Company,* 317 U. S. 476, which held (in interpreting Section 807 of the Revenue Act of 1932) that bequests to charities, *except*

the State succession, legacy or inheritance taxes levied thereon, were allowable deductions for Federal estate tax purposes. In other words, the Federal estate tax was assessed on the amount of all the individual legacies and bequests, and on the amount or value of the charitable bequests *only* to the extent of the 10% Pennsylvania inheritance tax levied thereon. .

Two legal questions are raised by these appeals: First, is each legatee and devisee (including the charitable residuary legatees) required to pay the Pennsylvania transfer inheritance tax of 10% on her, his, or its legacy or devise, or is this tax to be paid from the residue; second, are all Federal estate taxes to be apportioned among and borne by the non-charitable legatees and devisees or are they to be paid out of the residue?

### Pennsylvania Transfer Inheritance Tax*

The Pennsylvania Transfer Inheritance Tax Act of June 20, 1919, P.L. 521, 72 PS §2301, as amended, is not, as its name implies, a direct inheritance tax on the transfer of property, but is a tax upon the right of succession or inheritance, or the privilege of receiving property of a decedent at his death, and is payable ultimately** by the legatee or devisee: *Shugars v. Chamberlain,* 284 Pa. 200, 130 A. 426; *Tack's Estate,* 325 Pa. 545, 191 A. 155. However, a testator may always relieve a legatee or devisee from the payment of such tax: *Spangenberg Estate,* 359 Pa. 353, 59 A. 2d 103; *Brown's Estate,* 208 Pa. 161, 57 A. 360; *Stadtfeld Estate,* 359 Pa. 147, 58 A. 2d 478; *Dravo Estate,* 388

---

* Under the Act applicable to the case at bar, 2% for lineals and 10% for collaterals.

** By Section 16 of this Act, executors are charged with the duty of collecting and paying the tax.

Pa. 551, 131 A. 2d 351; *Youngblood's Estate,* 117 Pa. Superior Ct. 550, 178 A. 517.

In *Spangenberg Estate,* 359 Pa., supra, the Court reiterated the well established rule (page 355) : ". . . an inheritance tax is ultimately payable by the legatee or out of the estate passing to her, unless the will clearly indicates, either expressly or by necessary implication, that the legacy was given free of the tax: Anderson's Estate, 312 Pa. 180, 167 A. 329; Rettew's Estate, 142 Pa. Superior Ct. 335, 16 A. 2d 322."*

The testator's will contained no pecuniary or specific gift "free and clear of all taxes", nor any express tax-free clause; hence any relief from the payment of the Pennsylvania inheritance tax by a legatee (or devisee) must arise *clearly,* if at all, by plain or necessary implication from the will's provisions.

In *Beisgen Estate,* 387 Pa. 425, 128 A. 2d 52, the Court quoting from *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157, said (page 432) : " '. . . "The testator's intention must be ascertained from the language and scheme of his will: 'it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words': Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]": Sowers Estate, 383 Pa. 566, 119 A. 2d 60.' "

---

* See to the same effect: (1) *Dravo Estate,* 388 Pa. 551, 131 A. 2d 351; *Uber's Estate,* 330 Pa. 417, 199 A. 356; *Youngblood's Estate,* 117 Pa. Superior Ct. 550, 178 A. 517; and *Habecker's Estate (No. 3),* 43 Pa. Superior Ct. 91;—all of which involved the Pennsylvania inheritance tax; (2) *Horn Estate,* 351 Pa. 131, 40 A. 2d 471; and *Anderson's Estate,* 312 Pa., supra—which involved the Pennsylvania inheritance tax and the Federal estate tax; and (3) *Edwards Estate,* 377 Pa. 606, 105 A. 2d 312; *Audenreid Estate,* 376 Pa. 31, 101 A. 2d 721; *Stadtfeld Estate,* 359 Pa. 147, 58 A. 2d 478; and *Harvey Estate,* 350 Pa. 53, 38 A. 2d 262; all of which involved the Federal estate tax.

Since there is no provision in the will which frees the pecuniary or specific legatees from payment of any taxes whatever, we must search for language in the testator's will which *clearly* indicates by necessary implication his intent to give each of his 35 individual beneficiaries their bequest free and clear of all taxes?

The testator's only reference to taxes is in Item 56 of the will which, we repeat, provides as follows: "Item 56:—I give power to my Executors to *borrow money* to pay any debts or pay any taxes if they decide the time is not right for the selling of my securities, in paying my bequests and debts. The Executors to consult with Mr. Clinton A. Lutkins of New York City on condition and time to sell securities."

Item 56 merely gave testator's executors a discretionary power to borrow money for the purpose of paying debts or bequests or taxes. It is worthwhile to note that in the succeeding item (Item 57) the testator gave the executors power to sell assets and to make all necessary transfers. In neither of these items was the testator dealing with the relief, apportionment or allocation of death taxes, *or directing by whom they should ultimately be paid;* rather, he was creating administrative provisions and powers. It is impossible to interpret Item 56 as a *clear* indication or direction, either expressly or by necessary implication, that all of the Pennsylvania collateral inheritance taxes are to be paid out of the residuary estate, or that his individual legatees and devisees should receive their respective legacies and devises free of tax.

Generally speaking, precedents are rarely controlling in will cases because each will must be interpreted from its four corners, and no will has a twin brother: *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819. However, *Youngblood's Estate,* 117 Pa. Superior Ct., supra, is analogous. In that case the testatrix bequeathed *ab-*

*solutely**\** a specified number of shares of a particular stock of a stated value to various legatees. The Supe-rior Court said (page 555):

"The only reference to payment of taxes is in the seventh item of the will, which reads: 'All other prop-erty of whatsoever nature is left to my husband, in trust, and I empower and authorize him to sell such stocks as he thinks proper or necessary for the pay-ment of taxes and costs.' The taxes mentioned therein evidently referred to those the estate would be com-pelled to pay. The testatrix no doubt knew that there would be certain taxes due from the estate, independent of any that would be payable on the legacies, which the executor would be required to pay.

"In Tallman's Est., 10 D. & C. 89, the testator gave $1,000 to each of his two sisters. In the sixth item of his will, he provided: 'I direct that all inheritance taxes upon my estate, both as to life estate and the estate in remainder, shall be paid by my executor in due course.' The auditing judge awarded the two legacies of $1,000, *subject to payment of tax thereon.* Upon exceptions filed, Judge LAMORELLE . . . sustained the auditing judge's adjudication.

"We think the will did *not* impose the payment of the inheritance tax on the residuary estate, and, con-sequently it is not liable therefor."

The majority opinion says that Miss Spence was the primary object of testator's bounty. Although we consider the question to be entirely immaterial in the instant case, we wonder how she can be so denominated when the testator's bequests and devises to her totaled $160,000., while his bequests and devises to the Pres-

---

\* See also: *Edwards' Estate*, 56 D. & C. 682, where a pecuniary bequest to testator's secretary "outright" was held to be subject to the Pennsylvania Inheritance Tax.

byterian Hospital and to Princeton University each exceeded one million dollars.

It is even more obvious that over 30 individuals who were given very small pecuniary legacies could not possibly be denominated as the primary object of testator's bounty, and equally obvious that the primary object theory could not exempt them from inheritance tax.

An analysis of the language of testator's will demonstrates beyond any doubt that testator failed, either by specific language or by necessary implication, to clearly evidence an intent to give each individual legatee his legacy or devise free of the Pennsylvania inheritance tax. I venture to express the hope and belief that the majority considers this case to be sui generis; otherwise it would repudiate and impliedly overrule a number of decisions of this Court and of the Superior Court, as well as countless decisions of Orphans' Courts throughout this Commonwealth which have held that an absolute gift of a pecuniary legacy in a fixed amount of money, or a specific legacy or devise does not show an intention to relieve the legatee or devisee of the payment of Pennsylvania inheritance tax.

## Federal Estate Tax

The Federal Estate tax is not a legacy or succession tax or a tax on the privilege of receiving the property possessed by a decedent; instead, it is a tax on the (right of) transmission of a decedent's property, i.e., the statutory net estate of the decedent, which is payable out of the estate as a whole: *Riggs v. Del Drago,* 317 U. S. 95; *Helvering v. St. Louis Trust Co.,* 296 U. S. 39; *Chase National Bank v. United States,* 278 U. S. 327; *Saltonstall v. Saltonstall,* 276 U. S. 260; *Commissioner v. Clise,* 122 F. 2d 998. Prior to the enactment of the Pennsylvania Estate Tax

Apportionment Act of July 2, 1937, P. L. 2762, 20 PS 844, and the Estate Tax Apportionment Act of 1951, August 24, 1951, P. L. 1405, 20 PS 881, the Federal estate tax was payable out of and chargeable to the residuary estate, in the absence of a direction by the testator to the contrary: *Edwards Estate,* 377 Pa., supra.

The Act of 1937 changed the basic rule by providing:

"Whenever it appears upon any accounting or in any appropriate action or proceeding that an executor, . . . has paid an estate tax, levied or assessed under the provisions of the act, . . . or under any law hereafter enacted, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues."

The Act of August 24, 1951 (except for changes in context which are unrelated to the instant case) substantially reenacts Section 1 of the Act of July 2, 1937, and consequently the interpretation of the 1937 Act is of considerable importance in properly disposing of the issues here involved.

*Harvey Estate,* 350 Pa., supra, was concerned with the application of the Act of 1937. In that case the testator's will provided for (1) pecuniary legacies aggregating $235,000, each "subject to the payment of the Pennsylvania State Inheritance Tax", (2) specific legacies in which it was provided that the tax thereon was to be paid out of residue, and (3) a residuary

legacy in trust, the income to be divided by the trustees after deducting taxes and legal expenses. The pecuniary legatees contended that since their legacies were expressly made "subject to the payment of the Pennsylvania State inheritance tax", they were impliedly relieved from all other tax including the Federal estate tax. The Court rejected this contention, directed an apportionment of the Federal estate tax, and said (pages 56-57) : ". . . Like the Act of 1917, supra, the Act of 1937, supra, expressly supplies a presumption of the testator's intention and, when read into this will, is the equivalent of an express provision that these pecuniary legacies are subject to federal inheritance [sic] taxes. Unless there is in the terms of the will some provision which is *clearly inconsistent**\* with such construction, and, when the will is construed as a whole, will override it, the will shall be construed in accordance with the presumption provided by the statute.\* The appellants contend we should search for the testamentary intent in construing how these taxes shall be paid. With this contention we have no disagreement, but the statute creates a presumption which can only be overcome by clear language. When the statute is applied in this case, requiring each pecuniary legacy to pay its pro rata share of the federal tax, there appears no expression in the will of any intent by the testator to impose the the full burden of the federal tax on the residuary legatees in contravention of the statute."

How clear and strong the language of a testator must be to shift the burden of the tax from an individual legatee in order that charities shall pay their share of the tax—*even though all the equities* strongly favor the individual legatees—is further exemplified

---

\* See also *Stadtfeld Estate*, 359 Pa., supra.

by *Wahr Estate*, 370 Pa. 382, 88 A. 2d 417. In that case, a testatrix directed that her residuary estate "shall be divided into 12 *equal* shares or parts", and then gave 6 of such shares to named relatives and 6 to named charities. A majority of this Court* held (1) that the charities were relieved from the payment of the Federal Estate tax and the tax was to be eqquitably prorated between and paid by the individual legatees, and (2) that testatrix had not shown, expressly or by necessary implication, a contrary intent by providing for the division of the residuary estate into "12 *equal* shares". In that case, the primary objects of testatrix's bounty were her named individual residuary legatees, i.e., her named cousin (who was bequeathed 3 of such 12 shares) and 18 relatives (who were bequeathed 3 of such 12 shares). Nevertheless, they were required to pay *$483,000* in taxes and to receive a *small* fraction of the 1/12th *equal* share she specifically gave them, while the Charities were allowed to receive their six 1/12th equal shares *in full* and pay no federal taxes. That case—both in testamentary language and in equities—is far stronger in favor of exempting the individual legatees than is the instant case.

How clear and strong the testamentary language must be to show a contrary intent is further evident from *Stadtfeld Estate*, 359 Pa., supra, where this Court said (page 152) : "We come, then, to the question: Did Judge Stadtfeld 'otherwise direct in his will'? The act creates a presumption that a testator intends that proration should be made in accordance with its terms unless his will contains a specific pro-

---

* Justice BELL filed a dissenting opinion in which he pointed out that 12 *equal* shares meant 12 *equal* shares and not *a small fraction* of a 1/12th share for each individual and a 1/12th share *in full* for each charity.

vision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import: Harvey Estate, 350 Pa. 53, 56, 57, 38 A. 2d 262, 263. Only in the 18th paragraph of Judge Stadtfeld's will is there any provision in regard to the payment of taxes; that paragraph provides: 'I direct that all inheritance, estate, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my will or any codicil which I may hereafter execute, shall be paid out of the principal of my estate, *without diminution of any devises, bequests or legacies.*' It would seem too clear for discussion that this provision is wholly silent with regard to estate taxes on property not passing under the will and therefore is not broad enough to cover property which, though not so passing, is subject to the federal estate tax because of its constituting part of the decedent's gross estate."

How very strong the language must be, in order to clearly show a contrary intent is further evidenced from *Dravo Estate,* 388 Pa., supra, which is well summarized in the syllabus: "Where it appeared that testatrix created two inter vivos trusts which provided for certain distributions at her death which were subject to Pennsylvania transfer inheritance taxes; and testatrix's will provided 'I direct my Executors to pay all Federal and State taxes, estate, transfer, succession, and any other taxes due on account of my death against any property which may be included as a part of my estate for tax purposes which shall be subject to the provisions of the law of the State of Pennsylvania relating to the payment and apportionment of such taxes; provided, however, that the devises and bequests made by the first six paragraphs immediately preceding shall be free and clear of all such taxes

and shall be transferred and paid without deduction or liability for contribution'; it was *Held*, that (1) testatrix did not intend to shift the normal incidence of the transfer inheritance taxes; and (2) the court below had properly held that the Pennsylvania transfer inheritance taxes attributable to the trusts were payable out of the trusts and not out of testatrix's residuary estate."*

Finally, if there were any doubt on this point it would be removed by §4(b)(4) of the Apportionment Act of 1951 which covers the exact situation which has arisen in this case. That Act as amended provided, inter alia: "Powers of Testator or Settlor. A testator, settlor, or possessor of any appropriate power of appointment may *direct* how the estate tax shall be apportioned or allocated or grant a discretionary power to another so to direct.

"Section 4. Method of Apportionment—

"(a) Basis of Apportionment. Apportionment of the estate tax, except as provided in section three, shall be made among the persons interested in property includible in *gross* estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption.

"(b) Treatment of Deductions and Credits. The following principles shall apply with respect to deductions and credits allowable: (1) Deductions Allowed by Federal Revenue Laws in Determining the Value of Decedent's Net Estate. Any interest for which deduction is allowable under Federal Revenue laws in determining the value of decedent's net estate, *such as* property passing to or in trust for a surviving spouse and *charitable*, public or similar *gifts* or bequests to

* Justice BELL filed a dissenting opinion in which Justice B. R. JONES joined.

the extent of the allowed deduction, *shall not be included in the computation provided in subsection (a) of section four hereof, and to that extent no apportionment shall be made against such interest, . . ."*

"Section 4(b)(4): Inheritance or Death Tax Effect. To the extent that property passing to or in trust for a surviving ·spouse or any charitable, public or similar gift or bequest does not constitute an allowable deduction *solely* by reason of an inheritance tax or other death tax imposed upon and deductible from such property, it shall not be included in the computation provided for in subsection (a) of section four hereof, *and to that extent no apportionment shall be made against such property."*

The language of this Act clearly and specifically governs Appeals Nos. 254 and 255 adversely to the contentions and claim of Miss Spence, and we have no right to alter or rewrite clear language in order to attain what we believe is a more equitable and just result.*

Miss Spence, the appellee (in Nos. 254 and 255), further contends that the application of Section 4-(b)(4) of the 1951 Act to the instant case would be unconstitutional, because it is retroactive** and therefore deprives her of vested rights without due process. Section 9 of the Act of 1951 provides that the Act shall apply to the apportionment of Federal estate taxes with respect to any estate for which the Federal es-

---

* We note that the provision in Section 4(b)(4) was wisely eliminated in a subsequent amendment, viz., Act of May 10, 1956, P.L. 1599, §1, 20 PS §884.

** We, like many other people, believe that retroactive taxes of every kind and description, are inequitable and unjust, although their validity and constitutionality have often been sustained by the Supreme Court of the United States and by the Supreme Court of Pennsylvania.

tate tax return *is filed after the date of its enactment, regardless of when the decedent died.* In the instant case, the original return for the estate was filed after the effective date of the Act, although the testator died prior to the Act.

A similar contention was made and rejected in *Jeffery's Estate,* 333 Pa. 15, 3 A. 2d 393. In that case, the Act of 1937, whose effective date was July 2, 1937, was held to be constitutionally applicable to the estate of a decedent who died on November 10, 1935. See to the same effect *Jewell's Estate,* 235 Pa. 119, 83 A. 610; *Cahen v. Brewster,* 203 U. S. 543; *Carpenter v. Commonwealth of Pennsylvania,* 58 U. S. 456. See also *Anderson's Estate,* 373 Pa. 294, 95 A. 2d 674, where the Act of 1951 was applied to the estate of a decedent who died before its enactment. The Constitutional question raised in the instant case, however, was not raised in *Anderson's Estate.*

Miss Spence also argues that §4(b)(4) of the Estate Tax Apportionment Act of 1951, supra, is unconstitutional for the additional reason that it deprives the non-charitable beneficiaries of *vested property rights* and therefore denies them due process of law in violation of (a) the Fourteenth Amendment of the United States Constitution and of (b) Article I, §9 of the Pennsylvania Constitution. We find no merit in this contention.

The law is well settled that beneficiaries of a decedent's estate (whether by will or descent) have *no natural or vested* right to receive such property; on the contrary, whatever rights such beneficiaries possess are derived from and governed by statute and consequently the beneficiaries take under and subject to the applicable statutes. Unfortunately, it is established law that a State may validly escheat *all* of a decedent's net estate and such action would violate

neither the United States nor the Pennsylvania Constitutions: *Irving Trust Company v. Day,* 314 U. S. 556; *Tack's Estate,* 325 Pa. 545, 191 A. 155; *Kirkpatrick's Estate,* 275 Pa. 271, 119 A. 268; *Carpenter v. Commonwealth of Pennsylvania,* 58 U. S., supra. See to the same effect: *Mager v. Grima,* 8 How. 490, 494; *United States v. Fox,* 94 U. S. 315, 321; *United States v. Perkins,* 163 U. S. 625, 627, 628; *Plummer v. Coler,* 178 U. S. 115, 137; *Maxwell v. Bugbee,* 250 U. S. 525, 536; *Lyeth v. Hoey,* 305 U. S. 188, 193; *Demorest v. City Bank Co.,* 321 U. S. 36, 48; *United States v. Burnison,* 339 U. S. 87.

In *Irving Trust Company v. Day,* 314 U. S., supra, the United States Supreme Court, speaking through Mr. Justice JACKSON, said (page 562) : "Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction."

In *Tack's Estate,* 325 Pa., supra, what this Court, speaking through Mr. Justice, later Chief Justice, STERN, said is particularly apposite (pages 548, 549) : "The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. . . .

". . . The court further said [in Strode v. Commonwealth, 52 Pa. 181] that the 'estate passed into the hands of the executor for administration, and is taxed

in his hands as an estate. The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to collateral kindred is subject, is this 5 per cent duty to the Commonwealth. *And it is not until this work of administration is performed, that the right of succession attaches.*"

*Carpenter v. Commonwealth of Pennsylvania,* 58 U. S., supra, involved the question of the Constitutionality of the first Pennsylvania Inheritance Tax. In upholding the validity of the statute the United States Supreme Court said: "But, until the period for distribution arrives, the law of the decedent's domicile attaches to the property, . . . . The rights of the donee are subordinate to the conditions, formalities, and administrative control, prescribed by the state in the interests of its public order, and are only irrevocably established upon its abdication of this control, at the period of distribution. If the state, during this period of administration and control by its tribunals and their appointees, thinks fit to impose a tax upon the property, there is no obstacle in the constitution and laws of the United States to prevent it.* [Citing cases]."

---

* The Federal Estate Tax which is a tax on the estate of the decedent, failed to specify who was to bear the burden of the tax. This administrative determination was left by Congress to the States. In *Riggs v. Del Drago,* 317 U. S. 95, the Court said (page 98): "Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax."

In other words, it is clearly settled that testamentary legacies and gifts—even though the latter may constitute what is known in the law as a vested property interest or right—are subordinate during a period broadly referred to as the period of administration, to costs of administration, debts of decedent and death taxes.

It is clear that Miss Spence was deprived of no vested rights and equally clear that she was not deprived of due process.

I would affirm the decree of the Orphans' Court of Clearfield County as to No. 279, which imposed the Pennsylvania Inheritance tax on each legatee, and reverse the decree as to Nos. 254 and 255, which held that all of the Federal Estate tax should be borne by the residuary legatees (the charities).