## Wine Estate

*John H. Evans, Jr.*, for executors.

*William J. Joyce*, for exceptants.

McKAY, J., March 2, 1959.—Esther G. Davis, one of the residuary legatees under the will of Dora Goldberg Wine, has filed exceptions to the final account of the executors of said will in which she challenges the right of the executors to pay the collateral inheritance tax upon the residence property of decedent and its contents devised by the will to Louis Goldberg. The amount of the tax is $1,837.96.

The will is dated August 29, 1953. It makes four bequests to religious or charitable organizations, namely: $200 to Beth Israel Temple; $100 to the Temple Sisterhood; $100 to the Senior Hadassah, and

$100 to the Mercer County Crippled Children's Society; it devises the residence of the testatrix at 270 Baldwin Avenue, Sharon, and bequeaths its contents to Louis Goldberg, a brother of decedent; it then directs that the balance of the estate be sold by the executors and gives and bequeaths the residue to her sister, Esther Goldberg Davis, her brother Harry Goldberg, her brother Louis Goldberg, her niece Ina Roth Routman, and the McDowell National Bank of Sharon in trust for her brother Mannie Goldberg, each of said five residuary beneficiaries receiving one fifth part of it. Louis Goldberg and the McDowell National Bank of Sharon were named executors.

Prior to the dispositive provisions, however, the will provides, in the first paragraph, as follows:

"I order and direct my executors hereinafter named to pay all my just debts and funeral expenses, together with all inheritance, state or succession taxes chargeable against my estate or the beneficiary thereof, as soon as may conveniently be done after my decease."

The question before us is whether testatrix indicated her intention that the transfer inheritance tax on the bequest and devise to Louis Goldberg of the residence property and its contents should be paid out of the funds of the estate or whether it was her intention that the executors were merely to advance the transfer inheritance tax and be reimbursed for it by the brother.

Strange as it seems, there appears to be no decision in Pennsylvania construing a clause containing exactly the same language as that used by decedent in the first paragraph of her will. However, the principles governing the question who is to pay the transfer inheritance tax in situations like that which confronts us are well settled. They are as follows:

The transfer inheritance tax is levied against successions and in the usual case is ultimately the respon-

sibility of the recipient: Spangenberg Estate, 359 Pa. 353, 355. The burden of the tax may be shifted from the beneficiary to the estate by a clear direction to that effect; in case of doubt, the burden should be left with the transferee: Uber's Estate, 330 Pa. 417. The relief of a beneficiary from a deduction on account of transfer inheritance tax on his legacy may rest solely upon testamentary implication: Wright Estate, 391 Pa. 405. A provision expressing testator's intention to that end should receive a liberal rather than a strict construction: Blanche v. Smith, 57 Dauph. 351. The will need not expressly provide that the tax shall be borne by the "residuary estate" if testator's intention is manifest that that is what he desires to be done. The use of the word "residuary" is not mandatory: Horn Estate, 351 Pa. 131.

With these rules as a guide in determining testatrix's intention in the present case, let us again look at her will.

It will be noted, first, that the direction that the executors pay the inheritance taxes chargable against the beneficiaries is contained in the *first paragraph* of her will. This fact is significant, for it suggests that before legacies are given or real estate is devised, the inheritance tax is to be first paid by the executors and thereby indicates, at least to some extent, an intention that the money to pay the tax should come out of the estate: Tallman's Estate, 10 D. & C. 89.

In the Tallman case, testator first directed that his debts and funeral expenses be paid. He then gave a specific legacy to each of his two sisters, devised the residue of his estate to a trust company in trust, and finally stated: "I direct that all inheritance taxes upon my estate, both as to life estate and the estate in remainder, shall be paid by my executor in due course." The court held that in this case the general principle of law that each legatee must pay his own

tax is applicable. One of the reasons advanced for this conclusion was the fact that testator had inserted the direction for the payment of the tax *after* he had first disposed of his estate.

President Judge Lamorelle stated, at page 90:

"Moreover, if testator intended to treat the transfer inheritance tax as an administration expense, one would naturally have expected him to direct the payment of transfer inheritance tax and then to dispose of his estate, but he has done the very reverse. He has disposed of his estate and then directed the payment of the tax."

In the instant case, testatrix first directed the payment of the tax and then disposed of her estate. Thereby, according to the reasoning of President Judge Lamorelle, she indicated her intention to treat the transfer inheritance tax as an administration expense.

It will also be noted that the direction to pay the inheritance tax is coupled with the direction to pay decedent's debts and funeral expenses, items which are always payable out of the funds of the estate. The coupling of the inheritance tax with those items indicates the intention that the tax is to be paid at the same time and with the same funds as the debts and funeral expenses.

In Habecker's Estate (No. 3), 43 Pa. Superior Ct. 91, 92, the tax clause was: "The executors . . . are hereby further authorized and empowered to sell sufficient property or proceeds of crops to pay any debts and expenses, collateral tax, and legacies bequeathed, before any division is made of the rents, issues, and profits."

In holding that this clause authorized payment of the collateral inheritance tax out of the assets of the estate, the Superior Court quoted with approval the opinion of the lower court as follows, page 94:

" '. . . Quite as prominent in her mind was the collateral inheritance tax, and quite as certain her intention to provide for its payment. She puts debts, expenses, legacies and collateral inheritance tax in the same class, and her direction is to pay them. How is it possible to take any other meaning out of her words? There was no occasion to even refer to this tax unless she had some purpose relating to it. What was it? What other possible thing could it have been if it was not to pay it? . . .' "

The above rhetorical questions posed by the court in the Habecker case seem equally pertinent to the case at bar. If Mrs. Wine did not intend that her estate was to bear the inheritance tax on her devise and bequests, why did she direct her executor to pay them?

The Supreme Court of Connecticut in the case of Starr v. Watrous, 116 Conn. 448, 449, 165 Atl. 459, in construing a directory clause similar to that in the present case, relied upon the coupling of the inheritance taxes with the debts and funeral expenses in holding that the former were payable by the estate. The direction read: "All my just debts, funeral expenses, succession and other taxes be paid by my executors hereinafter named." The court said that the specification of succession taxes, an item outside the category of debts and other charges against the estate as such, and ordinarily having no place in such an introductory clause, must have been inserted deliberately for a special purpose regarding the payment of such taxes; that testatrix must be presumed to have known that unless she directed otherwise, the succession taxes would have been deductible from the several legacies, so that the presence of the provision evinced an intention that they be satisfied in some other way, and that the inclusion of them in the same classification with debts, funeral expenses and ordinary taxes

could hardly be regarded otherwise than as expressing an intention that they should be paid in the same way and from the same funds as these other charges.

A similar conclusion was reached by the Supreme Court of Wisconsin in In re Cudahy's Will, 251 Wis. 116, 28 N. W. 2d 340. In that case the provision of the will read:

"I direct that my just debts, funeral expenses and all inheritance, estate, and succession taxes be paid by my executors," and was followed by bequests and devises and a residuary clause.

The court said that, since the direction for the payment of the tax was accompanied by a direction to pay debts and funeral expenses which were in any case payable before the residue was computed and was followed by a disposition of the residue, the testator intended to dispose of the residue subject to diminution by the taxes as well as the debts and funeral expenses.

That these cases represent the general rule, see 37 A. L. R. 2d 124, where the law is stated:

"Where there is no express designation of the fund which is to be burdened with taxes but there is a general direction to the executor to pay all debts, expenses of administration, and taxes, there is an implied direction that the taxes are to be paid from the fund which also bears the burden of debts and expenses of administration."

It will also be noted that the only specific bequests or devises in the present will, other than those to Louis Goldberg, are four modest bequests to religious and charitable organizations. At the time of the writing of the will, 1953, it was the law in Pennsylvania that legacies to charitable organizations were subject to a collateral inheritance tax of 15 percent.[1] Testatrix

---

[1] Exemption was granted to such organizations by the Act of May 28, 1955, P. L. (1956) 1757, section 1, 72 PS §2301.1.

would be presumed to know or be advised as to the tax statutes in effect at the time she signed her will.[2]

One would expect that a testatrix would intend such small cash legacies as these to be paid in their round sum amounts rather than to be reduced by tax deduction to $170 for the Temple, and $85 for each of the other charities. If she intended that the estate should bear the tax on the four charitable gifts, the same intention would, of course, control the devise and bequest to her brother, Louis Goldberg.

Taking into consideration the will of Mrs. Wine as a whole, the position of the directory clause at the beginning of the will, the joining of the direction to pay inheritance taxes with the direction to pay debts and funeral expenses, the fact that the decision of the courts of other jurisdictions construing similar directory clauses are practically uniform in holding that such clauses indicate a testamentary intention that the tax be borne by the estate, and the fact that four small charitable bequests were made in the same will, we are of the opinion that testatrix intended that the collateral inheritance tax on the Louis Goldberg bequest and devise should be paid out of the assets of the estate and not by the beneficiary.

### Order

Now, March 2, 1959, exception no. 2 filed by Esther G. Davis to the final account of the executors in the above entitled estate is dismissed.

### Exception

And now, March 2, 1959, to the foregoing order of the court, counsel for the exceptants excepts and, eo die, a bill of exceptions is sealed for exceptants.

---

[2] A testator's legal intention is to be gathered from the state of the law at the date of the will, regardless of what it was at the date of his death. Crozer's Estate, 257 Pa. 241.