## Gross Estate

*J. Victor O'Brien* of *Fox, Rothschild, O'Brien & Frankel*, for exceptants.

*Harry J. J. Bellwoar, Jr.* of *Bellwoar, Rich & Mankas*, contra.

SAYLOR, J., April 27, 1962.—The executors of the will of Annie W. Gross, deceased, who was the divorced wife of William H. Gross, settlor under the deed of trust dated March 21, 1957, claim out of the trust corpus deficiencies of 1957 Federal income and estate taxes and Pennsylvania estate tax paid by them. The account of the trustees was filed because of this claim. The learned auditing judge held that under the Pennsylvania Tax Apportionment Act the testamentary estate of Annie W. Gross was entitled to be reimbursed for the taxes paid to the Commonwealth of Pennsylvania and to the United States Treasury except for

the Federal income tax, reimbursement for which was denied.

The trustees of the William H. Gross trust have filed exceptions to the findings of the learned auditing judge with respect to the two estate taxes, Federal and State.

In the codicil of March 27, 1956, to her will executed on August 17, 1943, Annie W. Gross provided as follows:

"I direct that all death, transfer or succession taxes due upon my estate or upon any trust created by me in my lifetime shall be paid by my executors . . .".

The question before the court is whether under that language the estate taxes levied on the corpus of the trust estate are payable out of the estate of Mrs. Gross or should be apportioned to the trust estate.

To understand the situation here involved, it is necessary to examine the facts relating to the creation of the trust estate before us.

William H. Gross owned an 80 percent interest in a business known as Belmont Laboratories Co., and conducted as a partnership by him and his wife who owned the remaining 20 percent. Marital difficulties led to the separation of husband and wife, which was followed by divorce in September 1957, in the action instituted by her in March 1954.

In 1956, Mr. Gross offered his wife $1,200,000 for her 20 percent interest in the partnership. This was refused because it was composed in part of certain of Mr. Gross' real estate interests at what were believed to be inflated values. In January 1957, an offer of $1,000,000 was refused as being less than the original offer.

Prior to the divorce, the parties executed a settlement agreement reciting Mrs. Gross' willingness to sell her one fifth share of the partnership based on the fair value of her interest in the tangible and intangible

assets of the business, "provided Mr. Gross sets up a trust for the benefit of their daughter and grandson in the amount of Five Hundred Thousand Dollars ($500,000)".

Settlement was made on March 21, 1957, when Mr. Gross paid Mrs. Gross $380,000 in cash for her partnership interest and established the trust now before us by delivering cash and securities valued at $500,000 to the trustees under the terms of the deed of that date.

On January 17, 1958, Mrs. Gross died, leaving her residuary estate in trust for the daughter and grandson who are the beneficiaries under the trust. Mrs. Gross' executors paid the estate taxes due the Federal and State governments and also a deficiency in income tax due by Mrs. Gross. In calculating these taxes, the United States Treasury officials included as part of decedent's estate the corpus of Mr. Gross' trust estate, and levied against the decedent's estate additional income taxes due to capital gains realized by Mrs. Gross in the sale of her partnership interests. The corpus of the trust created for her daughter and grandson was treated as part of the consideration passing to Mrs. Gross for such sale.

In making its assessment of estate taxes due by Mrs. Gross' estate, the Internal Revenue Service held that the source of the gift in trust was the decedent rather than her husband. It further held that the gift was made in contemplation of death and was therefore includible in the gross estate.

As a matter of fact, at the time of their settlement, Mrs. Gross required Mr. Gross to file on or before April 15, 1958, a gift tax return on the trust corpus and to pay any taxes arising out of the creation of the trust. Mrs. Gross joined with her former husband in executing a joint gift tax return upon which he paid the tax which was in reduced amount due to the application of gift tax credits allowed to Mrs. Gross.

The executors of Mrs. Gross' will appealed from the holdings of the Internal Revenue Service to the United States Tax Court. There the parties entered into a stipulation which resulted in the assessment of tax deficiencies against the estate. Allowing for all credits to which the estate was entitled, the various deficiencies in Federal taxes and in turn in the Pennsylvania estate tax were paid. Based on these payments, the executors claim for reimbursement from the Gross trust the following amounts:

(a) share of Federal estate taxes, $102,208.32, and of Pennsylvania transfer inheritance tax, $15,438.80, both with interest from April 17, 1959;

(b) Income taxes for 1957, $75,093.16, with interest from April 15, 1958.

The issue before the court en banc is whether the learned auditing judge erred in his finding that under the terms of Annie W. Gross' will the Federal and Pennsylvania estate taxes on the corpus of the William H. Gross trust were not payable out of her estate.

The executors of Annie W. Gross' will did not file exceptions to the finding of the learned auditing judge that there is no provision in the law for imposing on the trust estate before him any liability for payment of the income tax, the Tax Apportionment Act relating solely to death taxes. Hence, his denial of reimbursement of any portion of the Federal income tax is not before us.

The Pennsylvania Estate Tax Apportionment Act of August 24, 1951, P. L. 1405; 20 PS §882, provides in part:

"Estate tax . . . shall be apportioned equitably, as near as may be in accordance with the principles hereinafter stated, among all persons interested in property includible in gross estate . . . and they shall pay the amounts apportioned against them."

It is further provided:

"A testator, settlor or possessor of any appropriate power of appointment may direct how the estate tax shall be apportioned or allocated. . . . Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction . . ." 20 PS §883(a).

Is there such direction by the decedent in her will wherein, as above stated, she provides for payment out of her residuary estate of all death, transfer or succession taxes upon "my estate, or upon any trust created by me in my lifetime"?

The claimants argue that there is no direction to them as executors to pay any taxes apportioned to the trust before us. It is stipulated for the record that in her lifetime Annie W. Gross created a trust inter vivos by deed dated March 27, 1956, with a value at her death of $485,247.87. The corpus of this trust was taxable under Pennsylvania inheritance tax laws and the Federal estate tax laws. Obviously, testatrix in using the language above quoted intended to include that trust.

But the trust now accounted for was not created by Annie W. Gross. As stated by the learned auditing judge, William H. Gross created that trust with his own money. His wife Annie never had either actual or constructive possession of that money (or securities comprising the corpus) and did not join the settlor in setting up the trust. Hence, it is not included in the phrase "or for any trusts created by me".

That leads us to the words "my estate" in the excerpt from Annie's will above quoted. The exceptants assert that the corpus of the trust was part of Annie

W. Gross' estate and as such was taxed by State and Federal authorities. As stated in the adjudication, "The finding by the Tax Court that the $500,000 belonged to Annie for tax purposes is not binding on this Court." We are concerned here with what Annie provided in her will, not with what the taxing authorities decided should be the taxes due by her estate.

Exceptants cite authority for the proposition that the words "my estate" used in connection with the matter of tax liability include such items as the trust corpus here involved. Such words used in such manner may include far more than the property owned by a decedent at death and distributable under his will or according to the intestate laws. In Crooks' Estate, 36 D. & C. 58 (1939), and in Slattery's Estate, 54 D. & C. 542 (1945), the courts interpreted the words "taxes . . . assessed against" or "imposed upon" the testator's estate as including those charged against life insurance policy proceeds, property held by the entireties, etc. These cases are not apposite, nor are Roth Estate, 8 D. & C. 2d 70 (1956), and Brown's Estate, 59 D. & C. 638 (1946), also cited by the exceptants. There the courts were confronted with different language from that before us. Here it seems reasonably clear that the testatrix did not use the words "my estate" in such manner. Had she intended to have those words include not only everything she owned at death but in addition property that under State and Federal law was taxable to her estate, she could and should have stopped there. This for the reason that, under the cases cited, "my estate" would normally in the tax sense or in tax parlance include "any trust created by me". The fact that she used the additional phrase unmistakably indicates that the testatrix did not consider or intend that "my estate" include the corpus of any trust no matter by whom created. It is reasonable to suppose that by the words "my estate" she meant

her property passing by virtue of testamentary disposition. When she extended the field wherein a tax burden would be imposed upon property owned or possessed by her at her death, she did so only to the extent of including trust estates created by her, and her alone. She did not intend to, and did not, include the trust before us, the trust created by her husband.

Exceptants' contention that, because the trust was created as part of the consideration passing to Mrs. Gross upon the sale of her partnership interest, she must be deemed to have received the trust principal and then put it into the trust, does not impress us. The parties elected to make settlement in the manner above set forth. If they made a mistake then from the point of view of tax liability, of either or both, the error can not be corrected here. If, at the time of settlement, Mrs. Gross had altered her codicil of March 27, 1956, by adding to the words "upon any trust created by me" the words "or by others for my daughter and grandson, or as a result of my settlement with my former husband," the executors of her will would not have a claim against this trust. But this she did not do.

Moreover, under the basic rules of trust law, she could not have created the trust unless she herself established the corpus out of her own property. A settlor can create a trust by declaration of transfer inter vivos or by will only as to property he owns at the time the trust is created: Restatement of the Law of Trusts, 2d., §17. To hold that Mrs. Gross was in any way the creator of the trust before us would do violence to the basic theory of trust law long established in this Commonwealth: Converse v. Hawse, 326 Pa. 1, 4 (1937) : Cumberland County v. Lemoyne Trust Company, 318 Pa. 85, 95 (1935) ; and Eshbach's Estate, 197 Pa. 153 (1900).

To summarize, we revert to the language in the

testatrix' will involving Federal and State inheritance taxes.

In Wright Estate, 391 Pa. 405 (1958), the Supreme Court held, at page 411:

"The question, then, is what did the testator intend, as disclosed by his will, the intent being permissively ascertainable from implication no less than from express direction."

We find no intent of the testratix, by implication or otherwise that her executors pay any taxes on the trust. It is clear that the testatrix, Mrs. Gross, intended that her executors pay out of property in their hands only those taxes due by her estate on testamentary dispositions thereof and on trusts created by her in her lifetime. As the trust before us does not come within either category, we dismiss the exceptions and confirm the adjudication absolutely.